UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Case: 1:26-cv-02646 JURY DEMAND
Assigned To : Sooknanan, Sparkle L.
Assign. Date : 7/24/2026
Description: Pro Se Gen. Civ. (F-DECK)

ADAM LAMPARELLO,

Plaintiff,

v.

BILLIE JO KAUFMAN,

Defendant.

Civil Action No.

_____

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff Adam Lamparello ("Plaintiff"), proceeding pro se, for his Verified Complaint

against Defendant Billie Jo Kaufman ("Defendant"), alleges as follows:

### INTRODUCTION

1. This is a defamation action arising from a false accusation of online harassment delivered to the president of Plaintiff's university while a human resources investigation of Plaintiff was underway.

2. On May 29, 2025, Defendant Billie Jo Kaufman—a law librarian at a different institution, with no connection to Plaintiff's employer and no knowledge of his conduct—sent Georgia College & State University ("Georgia College") President Cathy Cox a private Facebook Messenger message stating of Plaintiff: "I believe he was harrassing [sic] women faculty with emails last yr but I forget the details."

3. The accusation was false. Plaintiff had not harassed women faculty members by email—during the prior year, at Georgia College, or anywhere else. No complaint, finding, investigation, disciplinary record, or evidence of any kind supported the charge. Defendant's own

1

RECEIVED

JUL 24 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

message conceded as much: in the same sentence in which she leveled the accusation, she admitted that she could not recall a single fact supporting it.

4. Defendant made the accusation as a stranger to Plaintiff's institution. She never worked with, supervised, or evaluated Plaintiff. She had no relationship with Georgia College, no access to Plaintiff's personnel or disciplinary records, and no firsthand knowledge of his interactions with any Georgia College faculty member.

5. President Cox informed Defendant in writing that Defendant's communications had been forwarded to Georgia College's human resources office for its "ongoing investigation" of Plaintiff and asked for supporting documentation. Defendant did not retract, correct, or attempt to verify her accusation. She instead supplied the requested documentation: a complete screenshot, with full identifying metadata, of a private message Plaintiff had posted to a closed professional listserv—a message Defendant disclosed in violation of that forum's confidentiality rules.

6. Within weeks of Defendant's accusation reaching the human resources office, Georgia College issued a terminal contract to Plaintiff—a professor with an exemplary documented record who had been confirmed on track for tenure. Plaintiff brings this action to recover for the reputational, professional, emotional, and economic harm Defendant's false accusation caused.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). The parties are citizens of different States, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Plaintiff is a citizen of the State of New Jersey.

2

9. Defendant is, upon information and belief, a citizen of the District of Columbia. She is domiciled in this District and is employed as a professional law librarian at the University of the District of Columbia David A. Clarke School of Law.

10. This Court has personal jurisdiction over Defendant because she is domiciled in the District of Columbia, regularly conducts her professional activities in this District, and authored and transmitted the communications giving rise to this action from this District.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides here, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims—including Defendant's publication of the defamatory statement—occurred in this District.

## PARTIES

12. Plaintiff Adam Lamparello is a licensed attorney in good standing in the State of New Jersey, a legal scholar, and a former tenure-track Assistant Professor of Law at Georgia College. He has taught law and law-related courses for approximately fourteen years and has published more than sixty-five scholarly works, including four co-authored books and articles in the law journals of Harvard, Columbia, Northwestern, the University of Pennsylvania, the University of Texas, and Fordham, among others.

13. Plaintiff's professional reputation is central to his work as both a university professor and licensed attorney. False accusations of online harassment bear directly on his professional integrity and future employment opportunities.

14. Defendant Billie Jo Kaufman is employed as a professional law librarian at the University of the District of Columbia David A. Clarke School of Law.

15. Defendant never supervised, employed, or evaluated Plaintiff and held no role in Georgia College's employment decisions concerning him. She had no institutional relationship

3

with Georgia College and no authority over Plaintiff's employment, tenure-track status, contract renewal, discipline, or personnel record.

16. Defendant had no access to Plaintiff's personnel file, disciplinary history, human-resources records, or faculty evaluations, and she never witnessed Plaintiff's interactions with any Georgia College faculty member. As alleged below, she published her accusation without firsthand knowledge, record review, or investigation of any kind.

## FACTUAL ALLEGATIONS

### A.    Plaintiff's Professional Record Before Defendant's Statement

17. Before Defendant's statement, Plaintiff had built an exemplary record as a legal educator, scholar, mentor, and attorney at Georgia College.

18. Plaintiff's annual performance evaluations from his Department Chair consistently characterized his work as "excellent," "impressive," "enthusiastic," and "overwhelmingly positive," praising his teaching, mentorship of pre-law students, leadership of the institution's Mock Trial program, experiential learning initiatives, and scholarship.

19. Plaintiff's student evaluations were consistently outstanding. Students described him as "the best professor" at the institution, "the most influential professor" they had encountered, and an "excellent teacher and kind person."

20. Plaintiff received sixteen institutional Thank-a-Teacher awards and, shortly before the events described herein, his department's Outstanding Teaching Award—the institution's formal recognition of its most distinguished educator.

21. Plaintiff's pre-tenure review rated him as exceeding expectations in every core category—teaching, scholarship, service, and student success—and his Department Chair expressly confirmed that he was on track for tenure and promotion consideration in Fall 2025.

4

22. Before Defendant's statement, no complaint, finding, investigation, or record of any kind had established that Plaintiff harassed women faculty members—by email or otherwise—and Plaintiff had never been disciplined at Georgia College.

**B.      The Legal Writing Institute Listserv and Plaintiff's May 29, 2025 Post**

23. The Legal Writing Institute ("LWI") operates a private, closed professional listserv for legal educators. The listserv is distributed through Mobilize.io at the address lwic@groups.mobilize.io and is restricted to credentialed legal writing and legal education professionals.

24. The listserv is governed by express membership guidelines prohibiting members from redistributing, forwarding, or disclosing listserv communications outside the forum without the author's consent. Those guidelines exist so that members may engage in candid professional discourse without fear that their communications will be extracted from context and used against them.

25. Defendant, as a listserv member, was aware of and bound by those confidentiality guidelines. She had no authorization—from the LWI, from Plaintiff, or from anyone else—to disclose Plaintiff's post to any person outside the forum.

26. On May 29, 2025, at 1:30:33 a.m., Plaintiff posted a message to the listserv under the subject line "Advice—Difficult Students." The post was sent from Plaintiff's LWI member address (adamlamparello.lwic@members.mobilize.io) to the listserv address (lwic@groups.mobilize.io). Defendant received it at her institutional address (billie.kaufman@udc.edu) as a listserv member.

27. The complete text of Plaintiff's post stated:

> "Hi everyone, I currently teach undergraduate law courses at Georgia College, and many of my students intend to apply to law school. The semester just ended, and it has been the most difficult

5

academic year I've experienced in fourteen years of teaching. Over the past several semesters, I've noticed that students have become more entitled and lack any sense of accountability. Nearly half of my students plagiarized one or more of the assignments. Others routinely pleaded for grade increases or assignment do-overs and often cried when receiving feedback they didn't like. Attendance has also been an issue, and I get excuses such as 'I'm not coming to class because I just stopped vaping,' or 'I had a long night, so I can't make it.' I've tried my best to help them and been flexible and supportive, but the lack of engagement, respect, and fragility is exhausting. In the final class, I addressed the issue directly and told them that such behavior won't serve them well in law school or other professional settings. Well, several students became visibly upset and filed complaints, though no formal action was taken. I have never seen anything like this. I'm reaching out to ask: Have you seen similar trends? How do you deal with it? I'm truly questioning whether I want to continue teaching and would appreciate any advice you can give. Thanks very much. Adam"

28. The post named no student, faculty member, staff member, or administrator. It made no reference—express or implied—to women faculty members, gender, harassment, or misconduct of any kind toward any person. It was a collegial request for guidance on student classroom behavior, a subject routinely discussed across legal academia.

## C.    Defendant's Unsolicited Disclosure of the Post to President Cox

29. On May 29, 2025, at approximately 8:21 a.m.—hours after receiving Plaintiff's post—Defendant forwarded it to President Cox through Facebook Messenger, without Plaintiff's knowledge or consent and contrary to the LWI's confidentiality guidelines, writing: "Since he mentioned the college, I'm sharing with you—maybe others already have. Hope you are doing well." Defendant identified Plaintiff by name and institution and directed the disclosure to the chief executive of his employer.

30. Cox responded: "Thank you so much for sharing this. Can you tell he is desperate? Many problems with this guy. Can you tell me where this was posted?"

6

31. Defendant replied: "True nut case. On the legal writing list serv. i think i will confirm that," and then confirmed the Legal Writing Institute listserv as the source. Plaintiff does not plead "True nut case" as an independent defamatory statement; he pleads it as contemporaneous written evidence of the hostility with which Defendant approached Plaintiff and the accusation she published that same day.

32. Cox then wrote: "Thank you. A pattern—every time he gets in trouble he starts attacking students, filing complaints against them—anything to discredit the students before they get the nerve to file complaints against him." By this point in the exchange, Defendant knew she was communicating with the chief executive of Plaintiff's institution about Plaintiff's employment situation, and that Cox was receptive to negative information about him.

D.    **Defendant's False and Defamatory Statement**

33. Later that day, Defendant published the following statement to President Cox through Facebook Messenger (the misspelling appears in the original):

> "I believe he was harrassing women faculty with emails last yr but
> I forget the details."

34. That is the false and defamatory statement at the heart of this action. It asserted that Plaintiff had harassed women faculty members through email during the prior year.

35. The statement was of and concerning Plaintiff. Defendant made it in the same exchange in which she had identified Plaintiff by name and institution; Plaintiff was the sole subject of the conversation; and President Cox understood the statement to refer to Plaintiff, as confirmed by her forwarding of Defendant's communications to the human-resources office investigating him.

36. The statement was false. Plaintiff did not harass women faculty members by email during the prior year (or ever), at Georgia College, or at any institution. No human resources

7

finding, disciplinary determination, adjudication, substantiated complaint, or investigative record established otherwise, and Plaintiff's documented record—his evaluations, teaching awards, and pre-tenure review—was fundamentally inconsistent with the accusation.

37. When Defendant published the statement, she had conducted no investigation of any kind. She had not reviewed Plaintiff's personnel file, disciplinary record, or employment history at any institution; had not spoken with Plaintiff or with any woman faculty member he allegedly harassed; and could not identify a single email, date, recipient, complaint, witness, or institutional finding supporting the accusation. She admitted in the accusation itself—in writing, in her own words—that she "forget[s] the details."

38. Rather than qualifying the accusation, Defendant simultaneously asserted the accusation while acknowledging that she could not recall facts supporting it.

39. The accusation was verifiable. Whether Plaintiff had harassed women faculty members by email during the prior year could be established or refuted by documentary evidence—emails, complaints, witness accounts, and institutional records. Defendant possessed none of that evidence, had reviewed none of it, and sought none of it. Had any factual basis existed, she could have identified the faculty members, the emails, the dates, or the complaints. She identified none.

40. Defendant's accusation was, and remains, the only accusation of harassment of women faculty members ever made against Plaintiff. No student, colleague, administrator, or institution had ever leveled that charge before Defendant introduced it into her exchange with President Cox.

E.    **President Cox Forwards the Accusation to Human Resources, and Defendant Supplies Documentation**

41. President Cox did not dismiss the accusation. She responded: "That would not surprise me. If you come across anything else, I'd appreciate your sharing it."

42. The following morning, May 30, 2025, at approximately 9:03 a.m., Cox sent Defendant this message:

> "Billie Jo—I've forwarded this info to our HR office for their ongoing investigation into this faculty member & they asked me for any more specifics I can provide. Is there a screenshot of his message from the list-serve you can send, or at least a date it was posted? Many thanks! Cathy"

43. Cox's message establishes in writing that Georgia College's human resources office had an "ongoing investigation" of Plaintiff; that Cox forwarded Defendant's communications—including the accusation itself—to that office; and that Cox was soliciting further documentation from Defendant for that investigation. Defendant therefore knew, no later than the morning of May 30, 2025, that her accusation had been placed into a formal employment proceeding concerning a named colleague.

44. Defendant responded: "I think I can do that. in a mtg." Cox replied: "Thanks—no rush!"

45. At approximately 10:06 a.m. that morning, Defendant sent Cox a complete screenshot of Plaintiff's listserv post with full header metadata, including Plaintiff's member address, the date and time of the post, Defendant's institutional address, the listserv address, and the subject line.

46. Defendant supplied that documentation in direct response to an explicit institutional request, after being told her communications were being used in an ongoing investigation of Plaintiff. At no point—then or since—has Defendant retracted, corrected, qualified, or attempted to verify her accusation.

9

**F.      The Institutional Escalation and Resulting Harm**

47. Following Defendant's communications, Georgia College escalated adverse employment actions against Plaintiff. The institution interrupted and delayed his standard contract-renewal process, expanded its investigation of his conduct, and departed from the progressive-discipline framework that ordinarily governs faculty employment concerns.

48. Defendant's accusation reached the human-resources office no later than May 30, 2025. Within weeks, Georgia College issued Plaintiff a terminal contract, thereby denying him continued tenure-track employment and eliminating the Fall 2025 tenure and promotion review for which he had been favorably positioned. The resulting hostile institutional environment and expanding investigative proceedings made Plaintiff's continued employment untenable.

49. Internal metadata produced in response to Plaintiff's Georgia Open Records Act requests shows that high-level internal correspondence concerning Plaintiff surged after Defendant's communications, incorporating terms including "termination," "terminal contract," "disciplinary action," "listserv," and "lawsuit."

50. Defendant's false accusation materially and substantially contributed to the escalation, character, and outcome of the proceedings against Plaintiff. Her accusation entered the investigation as purported evidence that Plaintiff had previously harassed women faculty members—a charge qualitatively different from, and far graver than, anything in the listserv post itself—and the documentation she supplied at the institution's request furnished material for the proceeding.

51. Whatever institutional concerns may have predated Defendant's statement, no complaint, finding, or record of harassment of women faculty members existed. Defendant introduced that false charge at the precise moment Plaintiff's contract renewal and tenure trajectory

hung in the balance. Before her communications, Plaintiff's documented record was exemplary; within weeks of her accusation reaching the human resources office, he had received a terminal contract. Defendant's false accusation was a substantial factor in that reversal and in the loss of Plaintiff's position and career at Georgia College.

## G.    Defendant's Disregard of the Truth

52. Plaintiff is a private individual, not a public official or public figure. The defamatory statement was a private accusation of online misconduct communicated privately to the president of Plaintiff's institution about a private employment matter.

53. A reasonable person—particularly a legal-academic professional familiar with the norms of faculty employment—would not accuse a professor and attorney of harassing women faculty members by email without first conducting some investigation, reviewing some record, speaking with some witness, or confirming some fact. Defendant did none of these things.

54. Defendant published the accusation while acknowledging, in the same sentence, that she could not remember any facts supporting it. She thus asserted as real an episode of misconduct whose supporting details she admitted she did not possess.

55. The means of verification were immediately at hand in the very conversation in which Defendant made the accusation. President Cox—the chief executive of Plaintiff's institution, with access to his personnel, human-resources, and disciplinary records—was the other participant in the exchange. Defendant never asked Cox whether any complaint had ever been made. She took no step to verify the charge before publishing it to the person best positioned to act on it.

56. Defendant's deliberate breach of the LWI listserv's confidentiality guidelines in obtaining and transmitting Plaintiff's private communication is independently probative of bad faith. Her decision to violate the rules of a closed professional forum and deliver a colleague's

11

private communication to that colleague's employer for use in an active employment investigation supports a reasonable inference that she was motivated by hostility rather than legitimate professional concern.

57. Defendant's characterization of Plaintiff as a "True nut case"—offered spontaneously in the same exchange, hours before the harassment accusation—is contemporaneous evidence that she acted out of personal hostility rather than neutral professional concern.

58. After learning that her accusation had been forwarded to human resources for an ongoing investigation, Defendant did not verify or withdraw it. She supplied further documentation instead. Those actions support a reasonable inference that Defendant acted without good faith and with reckless disregard for the truth.

## H.    The Statement Asserted Fact

59. Although Defendant prefaced her accusation with "I believe," the statement asserted fact, not opinion. It identified a specific category of misconduct (email harassment of women faculty members), within a defined time period (the prior year), by a named individual—and it represented that Defendant had once known the supporting details, even though she could no longer recall them. It thus communicated that a real, remembered episode of harassment had occurred and that a factual foundation for the charge existed.

60. Defendant disclosed no facts underlying her professed belief—because none existed. A recipient could only understand the statement as resting on undisclosed information Defendant had once possessed about a real episode of misconduct.

61. The recipient treated the statement exactly that way. President Cox did not respond to it as speculation; she forwarded it to her human resources office in connection with an active investigation and solicited supporting documentation—treatment reserved for reports of fact.

12

## I.    The Private, One-to-One Character of Defendant's Statement

62. Defendant's statement was a private message sent to a single individual through Facebook Messenger. It was not published in a newspaper, on a website, in a public forum, in a place open to the public, or to any member of the general public.

63. The statement was not made in connection with any issue under consideration or review by any legislative, executive, or judicial body. Defendant did not testify in any proceeding, petition any public body, file any complaint through any authorized channel, or respond to any subpoena, official inquiry, or formal reporting process. No governmental or institutional process had solicited her views when she volunteered the accusation.

64. Nor did the statement address any matter of public concern or public controversy. It was a private accusation about one individual's alleged private online conduct, communicated privately to his employer. Plaintiff was not a public figure, was not involved in any public controversy, and was not the subject of any public debate.

65. Defendant was not a party, witness, attorney, investigator, hearing officer, adjudicator, or participant of any kind in any judicial, administrative, or university proceeding concerning Plaintiff. She had no duty—legal, professional, or institutional—to report anything about Plaintiff to Georgia College, and no legitimate interest in his employment. She initiated the communication voluntarily, as a stranger to his institution, and her disclosure began with a deliberate violation of a closed professional forum's confidentiality rules.

66. Defendant and President Cox shared no common institutional duty, membership, or interest concerning Plaintiff's employment. Defendant was not a member of the Georgia College community, owed the institution no obligation of any kind, and had no responsibility for—or stake in—its personnel matters. Accordingly, Defendant's statement was not protected by any qualified

privilege because she had no legal, professional, or institutional duty to report Plaintiff's alleged conduct, no employment or common-interest relationship with Georgia College concerning Plaintiff's employment, and her communication was entirely voluntary, unsolicited, and made outside any official or institutional reporting channel.

## J.    Plaintiff's Discovery of the Statement and Timely Filing

67. Defendant's statement was transmitted through a private Facebook Messenger exchange between Defendant and President Cox. Facebook Messenger conversations are accessible only to their participants. The exchange was never publicly disclosed, was never communicated to Plaintiff, and was inaccessible to him through any reasonable investigative means. Plaintiff was not a party to the exchange, was never informed of its existence or contents, and had no basis to suspect that a stranger with no connection to his employer had privately accused him of harassment in a message forwarded to the human resources office.

68. Plaintiff exercised diligence. He pursued formal records requests under the Georgia Open Records Act concerning the circumstances of his separation, and he first discovered Defendant's statement on January 19, 2026, when Georgia College produced records—including the Facebook Messenger exchange—in response to those requests. Plaintiff identified the statement promptly upon receiving the production. Discovery of the statement before that production was impossible, absent formal legal process.

69. The institutional escalation Plaintiff experienced did not put him on notice of the statement. General awareness of adverse employment action is not awareness that an outside stranger has transmitted a false harassment accusation to the university president through a private messaging platform.

14

70. Because Defendant's statement was communicated secretly through a private Facebook Messenger exchange that was inaccessible to Plaintiff and inherently undiscoverable through reasonable diligence, Plaintiff's claim did not accrue until he discovered the statement on January 19, 2026. This action is filed within one year of that discovery and is therefore timely under the discovery rule applicable to inherently undiscoverable injuries. Alternatively, equitable tolling and related accrual principles preserve Plaintiff's claims because Plaintiff could not reasonably have discovered the statement before its production through the Georgia Open Records Act.

## K.    Damages

71. As a direct and proximate result of Defendant's false and defamatory statement, Plaintiff has suffered severe and continuing harm, including:

    (a) substantial and ongoing reputational injury within legal academia, higher education, and the legal profession;

    (b) the loss of his tenure-track position and the elimination of the tenure and promotion review for which he was favorably positioned;

    (c) loss of past and future employment income, salary, benefits, and academic compensation;

    (d) severe and lasting impairment of future academic and professional employment prospects; and

    (e) severe emotional distress, mental anguish, anxiety, and humiliation.

## COUNT I

### DEFAMATION PER SE

72. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

15

73. Defendant made a false and defamatory statement of fact of and concerning Plaintiff: that he "was harrassing [sic] women faculty with emails last yr." The statement asserted a specific, verifiable episode of online misconduct within a defined time period, and it was false.

74. Defendant published the statement without any absolute or qualified privilege and without Plaintiff's knowledge or consent to President Cathy Cox, a third party. Cox's forwarding of the statement to Georgia College's human-resources office was the natural and foreseeable consequence of publishing a harassment accusation to the president of Plaintiff's employer during an active investigation, and it extended the statement's circulation and injurious effect within the institution.

75. Defendant acted with at least negligence and, further, with knowledge of probable falsity or reckless disregard for the truth. She published a grave accusation while admitting in the same sentence that she could not remember the supporting facts; she conducted no investigation; she deliberately declined the means of verification immediately at hand; and she acted out of documented personal hostility toward Plaintiff.

76. The statement imputed to Plaintiff conduct incompatible with his fitness for his trade, business, and profession as a university professor and licensed attorney. It is therefore defamatory per se, and reputational injury and mental anguish are presumed without proof of special harm.

77. As a direct and proximate result of Defendant's statement, Plaintiff suffered the injuries described herein, including reputational harm, emotional distress, and economic loss. Plaintiff is entitled to presumed damages, together with compensatory and special damages in amounts to be determined at trial.

78. Because Defendant acted willfully, maliciously, and with reckless disregard for Plaintiff's rights, Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendant's conduct and to deter comparable conduct by others.

## COUNT II
## DEFAMATION (PLEADED IN THE ALTERNATIVE)

79. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

80. To the extent the statement is determined not to be defamatory per se, Plaintiff pleads defamation with actual and special harm in the alternative. Defendant published a false and defamatory statement of fact concerning Plaintiff to President Cox, acting with at least negligence and, alternatively, with reckless disregard for the truth. The publication caused Plaintiff actual harm, including reputational injury, emotional distress, impairment of professional standing and employment prospects, and economic loss.

81. As items of special damage stated pursuant to Federal Rule of Civil Procedure 9(g), Plaintiff specifically identifies the lost salary, benefits, and academic compensation associated with his Georgia College appointment following the terminal contract described herein, in amounts to be proven at trial. Plaintiff is entitled to compensatory, special, and punitive damages to the extent permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Adam Lamparello respectfully requests that this Court enter judgment in his favor and against Defendant Billie Jo Kaufman and award the following relief:

A. compensatory damages for reputational harm, lost income, lost earning capacity, lost career opportunities, impaired future employment prospects, emotional distress, and all other general and special damages proven at trial;

17

B. presumed damages for defamation per se, without proof of special harm;

C. punitive damages in an amount sufficient to punish Defendant's willful, reckless, and malicious conduct and to deter comparable misconduct;

D. prejudgment and post-judgment interest to the extent permitted by law;

E. costs of suit; and

F. such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: July 24, 2026

Respectfully submitted,

Adam Lamparello
Plaintiff Pro Se
201 Berkshire Road
Hasbrouck Heights, New Jersey 07604
Telephone: (201) 317-5115
adam@lamparello-law.com

18

## VERIFICATION

I, Adam Lamparello, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am the Plaintiff in this action; that I have read the foregoing Verified Complaint; that the factual allegations contained therein are true and correct to the best of my personal knowledge; and that the allegations stated upon information and belief I believe to be true.

Executed on: July 24, 2026

Adam Lamparello
Plaintiff Pro Se

19