**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ADAM LAMPARELLO,<br><br>*Plaintiff*,<br><br>v.<br><br>BILLIE JO KAUFMAN,<br><br>*Defendant*. | No. 1:26-cv-02646-SLS |

**DEFENDANT BILLE JO KAUFMAN'S**
**MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS**

Plaintiff Adam Lamparello has sued Billie Jo Kaufman, a law school librarian and administrator, for defamation based on a one-sentence remark that she sent privately to the president of another school. Lamparello's complaint should be dismissed in its entirety because the single statement at issue cannot plausibly support a claim for defamation.

## INTRODUCTION

This petty defamation case is an offshoot of a wrongful-termination case that Plaintiff Lamparello brought against his former employer, Georgia College & State University ("Georgia College"). *See Lamparello v. Cox*, *et al*., Case No. 5:25-cv-00469 (M.D. Ga.).[1] In the Georgia case, Lamparello alleges that he lost his teaching position because of a post he made to an email listserv that includes thousands of legal writing teachers. Exhibit A (Second Amend. Complaint in Case No. 5:25-cv-00469 (M.D. Ga.)) ¶¶ 38-45. In that post, Lamparello maligned his undergraduate

[1] The Court may take judicial notice of the documents filed in the Middle District of Georgia. *See, e.g.*, *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 171 (D.D.C. 2010) (noting court's "ability to take notice of adjudicative facts extends to judicial notice of court records in related proceedings").

students, stating they were "entitled," "lack any sense of accountability," "plagiarized," "pleaded for grade increases," "cried," and had poor attendance in class. *Id.* ¶ 43. When Lamparello obtained records from Georgia College, he learned that on May 29, 2025, the Defendant here, a librarian and dean at the University of District of Columbia David A. Clarke Law School, sent his listserv post to the president of Georgia College, who is a former colleague. *See* Amended Compl. (ECF No. 5) ¶¶ 33-36 (describing Kaufman's private messages to President Cox); *id.* ¶ 67 (alleging Lamparello did not learn of that exchange until January 2026).

Lamparello now sues Ms. Kaufman based on a single sixteen-word remark that she made to the President of Georgia College after sending her Lamparello's listserv post. The single remark at issue states in its entirely: "I believe he was harassing women faculty with emails last yr but I forget the details." Amended Compl. ¶ 37.

This one-sentence statement, made in the context of a collegial disclosure of information material to a teacher's employment at a public college—over a private, one-to-one messaging platform, never published to a wider public—is not actionable defamation. For one thing, the language used in the statement does not meet the legal standard for defamation, much less defamation *per se*, particularly when viewed alongside Plaintiff's own public statements. The statement is also protected by the well-established "common-interest" privilege, which serves to protect good-faith reports of misconduct, and the "fair comment" privilege. Finally, plaintiff has pled no plausible theory of damages. Plaintiff's First Amended Complaint should be dismissed in its entirety, with prejudice, for those reasons, among others, as set forth below.

## ALLEGED FACTS

Defendant Billie Jo Kaufman is the Associate Dean for Law Library & IT Services at the University of District of Columbia David A. Clarke Law School. Amended Compl. ¶ 9. Ms. Kaufman and Plaintiff Lamparello both subscribe to a listserv sponsored by the Legal Writing

Institute Community (the "LWIC listserv"), which includes thousands of educators and attorneys. *Id*. ¶ 29; Exhibit A ¶ 38.

Early on May 29, 2025, Lamparello posted a message to the LWIC listserv in his own name, identifying his role "teach[ing] undergraduate law courses at Georgia College." Amended Compl. ¶¶ 30-31. The message complained that his Georgia College students were "entitled," "lack any sense of accountability," "plagiarized," "pleaded for grade increases," "cried," and had poor attendance in class. *Id*. ¶ 31. Later that day, Ms. Kaufman forwarded Lamparello's post to her former colleague, Georgia College President Cathy Cox. *Id*. ¶ 33 ("Since he mentioned the college, I'm sharing with you – maybe others already have. Hope you are doing well.").

Ms. Kaufman sent Lamparello's post to President Cox in a "private, one-to-one Facebook Messenger exchange." Amended Compl. ¶ 66. That evening, President Cox responded: "Thank you so much for sharing this. Can you tell he is desperate? Many problems with this guy." *Id.* ¶ 34. President Cox then stated: "[E]very time he gets in trouble he starts attacking students, filing complaints against them – anything to discredit the students before they get the nerve to file complaints against him." *Id*. ¶ 36. Ms. Kaufman then recalled: "I believe he was harassing women faculty with emails last yr but I forget the details." *Id.* ¶ 37. It is this sentence, and *only* this sentence—the "Challenged Sentence"—that Lamparello claims to be actionable defamation. (All Cox said in response was "That would not surprise me." *Id*. ¶ 44.) A complete copy of the May 29-30, 2025, exchange between Ms. Kaufman and President Cox is attached as Exhibit B.

President Cox sent Lamparello's listserv post to the Georgia College HR office "for their ongoing investigation into this faculty member." Amend. Complaint ¶ 45. Plaintiff does not allege that President Cox sent her full text exchange with Ms. Kaufman to the HR office, or to anyone else. *Cf. Id*. ¶¶ 51-53. And in the Georgia case, Mr. Lamparello asserts that Georgia College

terminated him one month later solely because of his listserv post. *See*, *e.g.*, Exhibit A ¶ 99 ("But for Defendants' retaliation against Professor Lamparello for his exercise of protected speech as a citizen on matters of public concern, there is no doubt he would have earned tenure."). On September 11, 2026, the Middle District of Georgia dismissed most of Plaintiff's employment termination case with prejudice, preserving only part of a First Amendment retaliation claim for additional factual development. Exhibit C (Sept. 11, 2026, Order in Case No. 5:25-cv-00469).

Plaintiff alleges that he first learned about Ms. Kaufman's private message to President Cox only in January 2026, when "Georgia College produced records revealing Defendant's private statement and the Messenger exchange in which it appeared." Amend. Complaint ¶ 67. At no point during the discussions surrounding his termination from Georgia College did the Challenged Sentence come to his attention in any way. *Id.* ¶ 68.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) is decided on the face of the complaint, but the plaintiff must do more than simply assert the elements of a claim. Rather, the complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must disregard "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" and determine whether the remaining "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 679.

In addition to the complaint itself, a court reviewing a Rule 12(b)(6) motion may take into account matters of which it may take judicial notice, including public records, "facts contained in public records of other proceedings" like the Georgia case, and "documents upon which the

plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (quotation marks omitted).

In the District of Columbia, "not every uncomplimentary publication is libelous. An allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous or ridiculous." *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000) (internal quotations marks and citation omitted).

**ARGUMENT**

Lamparello's complaint should be dismissed, in its entirety and with prejudice, for failure to plausibly state a claim for defamation. To state a claim for defamation, Plaintiff must satisfy four elements under D.C. law:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (internal quotation marks and citations omitted); *see also, e.g.*, *Chishti v. Spottiswode*, 181 F.4th 92, 101 (D.C. Cir. 2026) (recognizing same formulation). The Amended Complaint fails to support any element beyond the mere fact of publication (privately, at that). First, the single Challenged Sentence is not sufficiently concrete to be defamatory, let alone defamatory *per se;* Second, it falls within well-established privileges; Third, the tentative language of the Challenged Statement shows that it was not made negligently; Fourth, Plaintiff did not adequately plead "special harm," as he must absent defamation *per se*.

## I. The Challenged Sentence Is Not Defamatory, Let Alone Defamatory Per Se.

The Challenged Sentence is neither false nor defamatory, for two reasons: It is best understood as an opinion incapable of being either true or false; and if it states a fact at all—true or false—the claim it makes is not defamatory.

### A. The Challenged Sentence Is a Tentative Statement of Opinion That Could Not Be Defamatory.

Any statement, whether or not marked as opinion, must itself be susceptible of being proven true or false to be actionable. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). "[A] statement of opinion is actionable only if it has an explicit or implicit factual foundation and is therefore objectively verifiable." *Washington v. Smith*, 80 F.3d 555, 556 (D.C. Cir. 1996) (internal quotation marks and citation omitted). And "[t]he determination of whether a statement asserts actionable facts or implies such facts is a question of law for the court to determine as a threshold matter." *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 10–11 (D.D.C. 2019) (internal quotation marks, alteration, and citations omitted). The Challenged Sentence is the sort of non-falsifiable, opinionated conjecture or surmise that cannot ground defamation liability.

The D.C. Circuit has set out a four-part framework for classifying alleged defamation as verifiably false, or merely nonactionable opinion: (i) "the common usage or meaning of the allegedly defamatory words themselves"; (ii) "the degree to which the statements are verifiable"; (iii) "the context in which the statement occurs"; and (iv) "the broader social context into which the statement fits." *Ollman v. Evans*, 750 F.2d 970, 979-84 (D.C. Cir. 1984) (en banc).

"[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993),

*quoted with approval by Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d 103, 122 (D.D.C. 2011) *and Passantino v. Weissmann*, 752 F. Supp. 3d 168, 176 (D.D.C. 2024).

Defamation claims commonly fail for this reason. In *Guilford Transportation Industries, Inc. v. Wilner*, a freight railroad sued over an op-ed in an industry publication, including statements that in their totality the railroad took to mean it was hostile to labor. 760 A.2d 580 (D.C. 2000). The statements, including words that the court assumed "reflect[] lack of precision, and treat[] the plaintiffs with undeserved asperity," were held to be too far from concrete statements of fact to ground a libel claim. *Id.* at 599. More recently, in *Bauman v. Butuwsky*, 377 F. Supp. 3d 1 (D.D.C. 2019), the court granted a Rule 12(b)(6) motion in a case brought by the spokesman for a murder victim against various commentators who alleged in media sources that he had been involved in a political cover-up of the murder's relation to a political controversy. Statements like "[defendant] finds [plaintiff's] involvement with the [victim's] family extremely suspicious" or that "'it seemed' to [defendant] that [plaintiff's] 'job is just to discredit and try to go after people'" were insufficiently factual to be actionable. *Id.* at 10-12. "[W]here the question of truth or falsity is a close one, a court should err on the side of non-actionability." *Id.* at 15 (quoting *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 317 (D.C. Cir. 1994)).

The "inclusion of cautionary language . . . weighs in favor of treating the statement that follows as an expression of opinion." *Id.* at 11 (internal quotation marks and citation omitted). Such "cautionary language"—like "some think" or "I believe"—"can give a reader advance warning to discount that which follows." *Passantino*, 752 F. Supp. 3d at 180 (quotation marks and citation omitted).

The Challenged Sentence cannot support a claim for defamation under this well-established precedent. The common usage of the words themselves do not rise to the level of "odious,

infamous, or ridiculous" characterization of the target—prong (i)—as argued below. It is a vaguely recalled allegation: "I believe he was harassing women faculty with emails last yr but I forget the details." This vague recollection is not readily verifiable—prong (ii). The statement begins with "cautionary words": "I believe." Hence the specific context of the statement is not one where defamation can usually be found—prong (iii). After the cautionary words come "conjecture" or "surmise," essentially opinion. And the broader context of the statement further undermines its ability to carry a defamatory meaning.

**B. The Challenged Sentence Is Not Defamatory *Per Se*.**

Plaintiff's Count I invokes only defamation *per se*, and the Challenged Sentence does not rise to the level required to support that claim. Only "statements about extreme subjects" are considered defamatory *per se*. *Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018) (per curiam). "That category includes 'statements imputing to a person a criminal offense; a loathsome disease; matter affecting adversely a person's fitness for trade, business, or profession; or serious sexual misconduct.'" *KLEO AG v. Rivada Networks, Inc.*, 148 F.4th 741, 746 (D.C. Cir. 2025) (quoting *Carey v. Piphus*, 435 U.S. 247, 262 n.18 (1978)). When a statement is sufficiently extreme to qualify as defamation per se, a Plaintiff need not separately establish that the statement actually did cause harm. *Id.* ("Statements like those are 'virtually certain' to damage someone's reputation, so a defamation plaintiff need not separately establish that the statements caused actual harm.").

Here, the sole sentence at issue reads: "I believe he was harassing women faculty with emails last yr but I forget the details." Amended Compl. ¶¶ 2, 37. This is nothing like what is required. To start with, even ordinary defamation must be more than "uncomplimentary." *Guilford Transp. Indus., Inc.*, 760 A.2d at 594. Rather,

> A publication is defamatory "if it tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." But an allegedly defamatory remark must be more than unpleasant or offensive; the

> language must make the plaintiff appear "odious, infamous, or ridiculous." . . . [T]he publication must be considered as a whole, in the sense in which it would be understood by the readers to whom it is addressed.

*Howard Univ. v. Best*, 484 A.2d 958, 988-89 (D.C. 1984) (citations omitted).

The sentence at issue does not rise to the level of an "odious, infamous, or ridiculous" accusation. The verb "harass" has a range of meanings, some of which are scarcely more than critical. *See generally* "harass, verb," *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/harassing, def. 1(b) ("(1) to annoy persistently; (2) to create an unpleasant or hostile situation for especially by uninvited and unwelcome verbal or physical conduct"). *Cf. Sinclair v. TubeSockTedD*, 596 F.Supp.2d 128, 133 (D.D.C. 2009) ("Of course, just stating that someone is 'spreading lies' or is a liar may not be actionable as defamation."). But even at its "uncomplimentary" edge, a vague recollection that Plaintff may have sent harassing *emails*—not to have harassed physically, or by professional deeds—is insufficient to render him "odious, infamous, or ridiculous."

Then, to establish defamation *per se*—to recover when there is no theory of damages on the table, for a private statement the Plaintiff had to seek out, and which nobody else knew about until he filed this case—Plaintiff must establish *more*. Again, he would need to establish that the Challenged Sentence is on such an "extreme subject[]" that a defamatory statement would be "'virtually certain' to damage someone's reputation." *KLEO AG*, 148 F.4th at 746 (quoting *Carey*, 435 U.S. at 262). While it is true that a "matter affecting adversely a person's fitness for trade, business, or profession" is a classic subject for defamation per se, *see id.*, it cannot be that every criticism of a professional is defamation per se. Rather, professional-misconduct allegations found to constitute defamation *per se* involve "illegal or unethical behavior," "incompeten[ce]," dishonesty, and the like. *Id.* at 746. Indeed, attorneys have failed to establish defamation *per se* for such charges as being "disgusting," "disgraceful," "shady," and "sleazy." *See generally* David

Elder, *Defamation: A Lawyer's Guide* § 8:33 (2025) (collecting cases). Recent cases in this District clearing the *per se* bar involve far more serious allegations of unfitness: that professional athletes used performance-enhancing drugs, *Zimmerman v. Al Jazeera America, LLC*, 246 F. Supp. 3d 257 (2017); that a company engaged in money-laundering, *Mar-Jac Poultry, Inc.*, 773 F. Supp. 2d at 120; or describing an individual as an "unethical person acting illegally to make trouble," a "betrayer[] and squealer[]" who "help[ed] the Chinese Communist Party," *United States ex rel. Guo v. Nat'l Endowment for Democracy*, 2022 WL 503765 at *13 (D.D.C. Feb. 18, 2022). Whatever it says about the legal profession, sending harassing emails is not disqualifying for a lawyer or a teacher in the way the taking performance-enhancing drugs is for an athlete or being a criminal front for the Chinese Communist Party would be for a businessman or diplomat.

The inadequacy of the Amended Complaint is particularly clear when considering, as the cases require, "the sense in which [the Challenged Sentence] would be understood by the readers to whom it is addressed." *Howard Univ.*, 484 A.2d at 989. President Cox, the sole reader, had worked for years with Plaintiff,[2] a teacher known for making extreme statements in, among other things, his own memoir. For example, Plaintiff's memoir states: "For me, being a lawyer was such a terrible experience that I was unable to fake it anymore. I got fired from my first job. I got a second job and got fired from that one, too. I went to a third law firm and, after a few months, simply walked away." Adam Lamparello, *Ten-Mile Morning: My Journey through Anorexia Nervosa* (Hamilton Books 2012) at Kindle locations 498-500. He also describes early rejections from law teaching jobs: "I got so many rejection letters that I felt academically raped (I say this in a half-joking way)." *Id.* at Kindle locations 1120-23. These passages were both cited in a widely-

---

[2] See Exh. A at ¶ 6 (alleging Cox was at all relevant times Plaintiff's ultimate supervisor); *id.* ¶ 12 (alleging Plaintiff started at Georgia College in 2020). It appears Cox became president of the College on October 1, 2021. *See Office of the President: Biography*, https://www.gcsu.edu/president/biography.

circulated blog post arguing that Plaintiff was unsuited to legal teaching. *See* "Indiana Tech Law Prof. Adam Lamparello Writes Snotty Poor-Little-Me Memoir About His Disillusionment with Practicing Law, Hookers, Cocaine, His Church, His Frat, His Girlfriends, and His Alleged Eating Disorder," (Sept. 6, 2013),[3] attached hereto as Exhibit D.

Similarly, in one of his academic articles, Plaintiff says "Higher education is becoming the modern day Gestapo," and that universities "pamper, coddle, and over-react to the whims of every hyper-sensitive student who would rather label a professor or fellow student 'insensitive' rather than engage in a constructive dialogue . . . ."[4]

Mr. Lamparello's many public statements about his hostility towards lawyers and legal academics provide additional context for the Challenged Sentence. Ms. Kaufman's tentative remark— "I believe he was harassing women faculty with emails last yr but I forget the details"— is hardly noteworthy in this context. It is not defamatory; it does not label Plaintiff as unfit for his profession, in the context in which it was stated and against the background information shared by the participants to the private exchange.

## II. The Challenged Sentence Is Not Actionable Because It Is Privileged.

Even if the Challenged Sentence could be seen as a factual claim, of sufficient gravity to defame, Plaintiff's defamation claim would still fail because the statement at issue is subject to well established privileges grounded in the First Amendment. Whether an allegedly defamatory statement is privileged is a pure question of law, *Carter v. Hahn*, 821 A.2d 890, 894 (D.C. 2003),

---

[3] Available at https://outsidethelawschoolscam.blogspot.com/2013/09/indiana-tech-law-prof-adam-lamparello.html.

[4] Adam Lamparello, "Promoting Inclusion through Exclusion: Higher Education's Assault on the First Amendment," 18 *U. Penn. J. Const. L.* 1, 1-2 (2016), https://repository.law.upenn.edu/Documents/Detail/promoting-inclusion-through-exclusion-higher-educations-assault-on-the-first-amendment/141772.

which the Court can therefore resolve at the pleading stage. Such a finding would then shift the burden to the plaintiff "to prove the privilege has been abused." *Payne v. Clark*, 25 A.3d 918, 925 (D.C. 2011) (quotation marks and citation omitted). *See generally Chishti*, 181 F.4th at 102-04 (affirming Rule 12(b)(6) dismissal based on D.C. privileges applicable to defamation claims). Plaintiff's conclusory allegations that no privilege applies, or that if one applies it was abused, Amended Compl. ¶¶ 64-65, are insufficient to defeat a Rule 12(b)(6) motion under *Iqbal*. He pleads no facts suggesting abuse of either privilege. *See id.*

### A. The Challenged Sentence Falls Under the Common Interest Privilege.

Ms. Kaufman's statement to President Cox falls squarely within what is known in D.C. as the "common interest" privilege. "To come within the protection of the 'common interest' privilege, the statement must have been (1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, (3) to a person who has such a corresponding interest." *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990) (citation omitted). The privilege applies when "there is information that affects a sufficiently important interest of the recipient," the recipient "is entitled to know it," *Washburn v. Lavoie*, 437 F.3d 84, 90 (D.C. Cir. 2006) (quoting Restatement (Second) of Torts § 594), and the recipient has a "corresponding interest." *Moss*, 580 A.2d at 1024. Where the privilege applies, a mere "failure to undertake a reasonable inquiry prior to publication" does not constitute the "malice" necessary to overcome it. *Moss*, 580 A.2d at 1024-25. Rather, to overcome the privilege, Plaintiff would need to show either "excessive publication" to "those with no common interest" (plainly inapplicable to the private Facebook message here), or else "malice, which, within the context of the common interest privilege, is 'the equivalent of bad faith.'" *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 858 (D.C. Cir. 2006) (quoting *Moss*, 580 A.2d at 1025). The privilege is not necessarily confined to reports within a single institution.

*See id.* at 849 n.3 (finding privilege applicable when statement was made within company and to the D.C. Department of Employment Services).

Notwithstanding the Amended Complaint's baseless and conclusory insinuations of personal animus—without noting that the parties have never even met—it is plain from the face of the exchange between Ms. Kaufman and President Cox that the challenged statement was a good-faith communication from one academic administrator to another, reflecting Ms. Kaufman's common interest and professional duty in ensuring the integrity of teaching faculty. In conveying both the LWIC listserv post and the Challenged Sentence, Ms. Kaufman was providing information in their professional community, concerning possible misconduct, by an employee for whom President Cox had ultimate authority. Amended Compl. ¶¶ 18, 27–31. To whatever extent Plaintiff might make it seem otherwise through selective quotation, a review of the entire exchange, attached to the present motion as Exhibit B, makes clear:

- Ms. Kaufman initiated the exchange, referring to Lamparello's listserv post: "Since he mentioned the college, I'm sharing with you – maybe others already have." Exhibit B at 1. The only reasonable understanding of this statement is that it was the conveyance of Lamparello's post, in his capacity as Georgia College employee, by another legal academic, to President Cox for use in her professional capacity—anticipating that perhaps other colleagues had already provided the same information. The expectation others might have done so only confirms that Defendant Kaufman thought it an appropriate kind of professional communication, not some personal vendetta.
- President Cox received the initial communication appreciatively and with immediate reference to her professional role: "Thank you so much for sharing this . . . Many problems with this guy. . . ." *Id.* at 2.

- As the exchange continued, Ms. Kaufman noted an additional thought: "I believe he was harassing women faculty with emails last yr but I forget the details." *Id*.

There can be no serious question that President Cox was the kind of recipient "entitled to" know, or with a sufficient "interest" in knowing, about the listserv post and about Ms. Kaufman's other concerns about a Georgia College employee. It is clear that is why Ms. Kaufman contacted President Cox at all: "Since he mentioned the college, I'm sharing with you." Amended Compl. ¶ 33. And her doing so was consistent with the professional norms of legal academics and administrators. *See, e.g.*, Amer. Bar. Assoc., Standards & Rules of Procedure for Approval of Law Schools 2026-27, Standard 404(b) (providing a "law school shall periodically evaluate the extent to which the faculty discharges its cores responsibilities under the law school's policies and the contributions of each full-time faculty member to meeting the core responsibilities of the faculty.")[5] Consistent with standards of professional conduct, it was *prima facie* entirely appropriate for Ms. Kaufman to have shared what information she had with Dean Cox to enable her colleague to discharge her supervisory responsibilities. *Accord, e.g.*, D.C. Rule Prof. Cond. 8.3(a) (required reporting of a lawyer's professional misconduct to "the appropriate professional authority").

Far from meeting a standard of malice or bad faith, therefore, Ms. Kaufman's message was a conscientious attempt to ensure that important information was conveyed to President Cox—information in which she unquestionably had an important proprietary interest as the employer of Plaintiff.

---

[5] Available at https://www.americanbar.org/content/dam/aba/administrative/legal_education_and_admissions_to_the_bar/standards/2026-2027/2026-2027-standards-chapter-4.pdf.

### A. The Challenged Sentence Is Subject to the Fair Comment Privilege.

The one sentence at issue—"I believe he was harassing women faculty with emails last yr but I forget the details"—also falls within the "fair comment" privilege, as contextualized by the First Amendment nature of expression about matters of public concern, in the context of a conversation about Plaintiff's unbecoming professional conduct as a public-college employee, between two academic administrators and former colleagues. The privilege provides "legal immunity for the honest expression of opinion on matters of legitimate public interest when based upon a true or privileged statement of fact." *Milkovich*, 497 U.S. at 13 (cited with elaboration in *Chishti*, 181 F.4th at 103). The Challenged Sentence was, doctrinally, exactly this: A fair comment expressing concerns about Plaintiff's treatment of other faculty members at a public college.

Moreover, Plaintiff should not be permitted to argue here that the discontinuation of his employment at Georgia College, and the events leading up to it, were anything but a matter of legitimate public interest, since that is his principal claim in the Geogia case. There, he argues he was protected from adverse action based on the LWIC listserv post precisely because he "spoke in his capacity as a private citizen and on a matter of public concern" in posting. Exhibit A ¶ 71. If Lamparello's speech to "thousands of law professors dedicated to teaching legal writing," *id.* ¶ 135, was private speech on a matter of public concern, *a fortiori* Ms. Kaufman's private messages to President Cox about Lamparello's employment as a teacher at her college were as well. And that includes the Challenged Sentence that formed one part of their exchange.

## III. Neither Count Adequately Alleges Causation and Damages.

The fourth and final element of a defamation claim requires "either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Oparaugo*, 884 A.2d at 76. That element can be met in one of two ways: "First, a plaintiff can allege that the challenged statements were so inherently harmful that they were

defamatory per se, in which case no additional showing of damages is required." *KLEO AG*, 148 F.4th at 745 (citing *Farnum v. Colbert*, 293 A.2d 279, 281–82 (D.C. 1972)). "Second, a plaintiff can allege that the statements caused 'special damages,' a term that 'refers to actual pecuniary loss.'" *Id*. (quoting 1 *Law of Defamation* § 1:15 (2d ed. May 2025 update)). Special damages must be pled with specificity pursuant to Federal Rule of Civil Procedure 9(g). To meet that requirement, a complaint "must identify a specific economic loss and 'evidence of causation' linking that loss to the challenged statements." *Id*. at 748 (quoting *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002)).

Count I ("Defamation Per Se") does not attempt to plead special harm, as required absent a statement so extreme that it is actionable as a matter of law. Because the statement at issue does not rise to that level, *supra* at § I.B, Count I necessarily fails.

Count II ("Defamation") includes a cursory attempt to plead special harm, but the allegations in the complaint do not plausibly support those damages. In Count II, Plaintiff speculates that there may be "actual and special harm" here "to the extent discovery and proof establish that Defendant's publication proximately caused or contributed to the particular loss" associated with the adverse developments in his employment at Georgia College. Amended Compl. ¶¶ 79-80. That speculation fails to meet the plausibility test required to survive a motion to dismiss, let alone Rule 9(g)'s specificity obligation.

First, it is not clear that the Challenged Sentence was shared with *anyone* other than President Cox. *See*, *e.g.*, Amended Comp. ¶ 46 (hypothesizing President Cox could have "conveyed the accusation or its substance to human resources"). More fundamentally, it is implausible that Georgia College took any actions based on the Challenged Sentence. Indeed, in the lawsuit he filed in the Middle District of Georgia, Plaintiff asserts that he lost his teaching

position at Georgia College *solely* because of his own listserv post. *See*, *e.g.*, Exhibit A ¶ 99 ("But for Defendants' retaliation against Professor Lamparello for his exercise of protected speech as a citizen on matters of public concern, there is no doubt he would have earned tenure."). And the full correspondence between Ms. Kaufman and President Cox shows that Georgia College was focused on the listserv post, seeking further documentation on the post while asking nothing further about the Challenged Sentence. Amended Compl. at ¶¶ 44-45; Exhibit B at 2.

Those undisputed facts undermine any plausible connection between Ms. Kaufman's single tentative statement to President Cox and Lamparello's loss of the salary and benefits he received from Georgia College. Indeed, Plaintiff should be estopped from further pursuing this theory entirely, now that the Middle District of Georgia has relied on his assertion that he lost his Georgia College teaching position solely because of his listerv post. *See* Exhibit C at *1-5 (summarizing Plaintiff's account). *See generally New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (describing judicial estoppel against "clearly inconsistent" positions).

## IV. The Amended Complaint Should Be Dismissed with Prejudice.

This suit has imposed substantial costs on Ms. Kaufman, and it should never have been brought at all. Plaintiff has already filed one amended complaint, as permitted by Fed. R. Civ. P. 15(a)(1). Leave for further amendment should be denied, as it would be futile Plaintiff cannot cure the defects in his defamation claims, because no possible facts would change the nature of the Challenged Sentence or defeat the applicable privileges. A complaint should be dismissed with prejudice "when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (quotation marks and citations omitted). This case satisfies that standard: No new allegations can change the fact that Ms. Kaufman's one-sentence, private Facebook message cannot support a claim for defamation.

## CONCLUSION

The Amended Complaint should be dismissed with prejudice for the reasons set forth above.

Dated: September 14, 2026

Respectfully Submitted,

*s/ Rebecca S. LeGrand*
Rebecca S. LeGrand (DC Bar 493918)
LeGrand Law PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Phone: (202) 587-5725
rebecca@legrandpllc.com

Scott Shuchart
Shuchart PLLC (DC Bar 1531377)
5636 Connecticut Ave., NW #42289
Washington, DC 20015
Phone: (202) 527-9026
scott@shuchartlaw.com