# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **ADAM LAMPARELLO,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CATHY COX, *et al.*,**<br><br>**Defendants.** | ) | **CIVIL ACTION NO. 5:25-cv-469 (MTT)** |

**ORDER**

Plaintiff Adam Lamparello filed this action arising out of his employment as a professor at Georgia College and State University, bringing claims of retaliation under the First Amendment, violation of due process under the Fourteenth Amendment, and breach of contract under Georgia law. ECF 1; 4. The Defendants have moved to dismiss. ECF 15. For the following reasons, the Defendants' motion to dismiss (ECF 15) is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

In 2020, Lamparello began working as a professor at Georgia College and State University's ("GCSU") Department of Government and Sociology. ECF 4 ¶ 12. Lamparello taught several courses, "including Introduction to Law, Introduction to Criminal Justice, Constitutional Law II, American Judicial Systems, Legal Research and Writing, and Ethics." *Id.* ¶ 13. Lamparello also served as the mock trial coach and pre-law advisor. *Id.*

**A. Lamparello's Speech**

In February 2025, Lamparello claims he discovered that students in his American Judicial Systems class committed plagiarism. *Id.* ¶¶ 25-26. According to Lamparello, he continued to discover multiple incidents of plagiarism through April 2025. *Id.* ¶ 27. Lamparello reported the plagiarism incidents. *Id.* ¶¶ 29, 31. Lamparello alleges that "one of the cheating students retaliated" after he reported the plagiarism. *Id.* ¶ 31. Specifically, Lamparello alleges that the student "begged … for grade increases and cried when she did not receive a grade she believed she deserved." *Id.* She then "falsely complained of Professor Lamparello's 'unprofessionalism,' alleging he never gave them feedback, graded inconsistently, and treated her 'unfairly.'"[1] *Id.*

"[D]iscouraged by the University's failure to address repeated incidents of plagiarism, Professor Lamparello turned for advice to a listserv on which he had participated for years." *Id.* ¶ 37. "The listserv is run by the Legal Writing Institute Community ("LWIC"), the largest organization of legal writing professionals in the world." *Id.* ¶ 38. The listserv is an unmoderated group of educators and practicing attorneys in the United States and internationally who "are dedicated to teaching legal writing and sharing their experiences as professionals." *Id.* ¶ 38, 40. Lamparello participated in the listserv using his private email address. *Id.* ¶ 41. On May 29, 2025, Lamparello posted the following message on the listserv:

Advice -- difficult students

---

[1] Presumably, Lamparello raises this student conflict to buttress his argument that the Court should find his speech is academic-related, and thus entitled to special treatment. It's a risky tactic. If he fails to move his employment-related speech into the small bastion that shields academic speech, he only strengthens GCSU's freedom to address and discipline workplace speech.

> Hi everyone,
>
> I currently teach undergraduate law courses at Georgia College, and many of my students intend to apply to law school. The semester just ended, and it has been the most difficult academic year I've experienced in fourteen years of teaching.
>
> Over the past several semesters, I've noticed that students have become more entitled and lack any sense of accountability. Nearly half of my students plagiarized one or more of the assignments. Others routinely pleaded for grade increases or assignment do-overs and often cried when receiving feedback they didn't like. Attendance has also been an issue, and I get excuses such as "I'm not coming to class because I just stopped vaping," or "I had a long night, so I can't make it."
>
> I've tried my best to help them and been flexible and supportive, but the lack of engagement, respect, and fragility is exhausting. In the final class, I addressed the issue directly and told them that such behavior won't serve them well in law school or other professional settings. Well, several students became visibly upset and filed complaints, though no formal action was taken. I have never seen anything like this.
>
> I'm reaching out to ask: Have you seen similar trends? How do you deal with it? I'm truly questioning whether I want to continue teaching and would appreciate any advice you can give. Thanks very much.

*Id.* ¶ 43.

**B. GCSU's Response**

On June 30, 2025, Lamparello received an email from GCSU's registrar informing him that an investigation "concluded that he had violated the Federal Educational Rights and Privacy Act (FERPA)." *Id.* ¶ 50. "The [r]egistrar advised Professor Lamparello to review the University's FERPA policies to avoid future violations. However, the registrar did not indicate that Professor Lamparello was otherwise subjected to discipline." *Id.* ¶ 52. Lamparello responded with a message disputing the allegations. *Id.* ¶ 53. About an hour later, Defendant Amy Phillips, GCSU's Interim Chief Human Resources Officer, emailed Lamparello and requested to meet immediately. *Id.* ¶¶ 54-55.

The next morning, Lamparello met with Phillips and Defendant Indiren Pillay, GCSU's Interim Dean of the College of Arts and Sciences. *Id.* ¶¶ 7, 55-56. According to Lamparello, Phillips and Pillay informed him that his listserv post "created an 'unbecoming look'" for GCSU and the University's President, Defendant Cathy Cox. *Id.* ¶ 56. Phillips allegedly "observed that 'Georgia College students intend to apply to law school,'" and asked if Professor Lamparello had made the statements in his listserv post. *Id.* ¶ 65. Lamparello alleges that Phillips then asked him: "Did you consider that [the email] might negatively impact the students here at GCSU who are applying to law schools?" *Id.* ¶ 69. Phillips and Pillay shared that a "colleague from a law school out of state" discovered Lamparello's listserv post and shared it with President Cox. *Id.* ¶ 72. Phillips and Pillay ultimately informed Lamparello "that [his] 2025-26 contract is on hold status, pending review of these items under [University System of Georgia Board of Regents] Policy § 8.2.18 (Core Values and Code of Conduct), and Georgia College policies on academic professionalism." *Id.* ¶ 80. During the meeting, Phillips and Pillay also discussed the pending FERPA investigation with Lamparello. *Id.* ¶ 78. Phillips then stated: "Based on what's been shared, it's the intent of President Cox and Dr. Roberts to issue a terminal contract — your final contract for the upcoming year." *Id.* ¶ 82. According to Lamparello, that meant he "could finish out the year, but was canceled from the tenure track and told this year would be his last." *Id.*

**C. Lamparello's Contract**

When Lamparello began at GCSU in 2020, he was given a one-year contract with no guarantee of renewal. *Id.* ¶ 96. However, Lamparello alleges that after his 2021 evaluation, the Government and Sociology departments "promoted" him to a tenure-

track professorship. *Id.* ¶ 97. Lamparello does not attach or incorporate any employment contracts, and he provides little detail about the terms of his 2024-2025 contract. However, he alleges he was scheduled to "go up for promotion to associate professor with tenure in the coming fall semester 2025." *Id.* ¶ 98. Lamparello alleges that "[a]ll contracts extended to Plaintiff incorporated by reference the policies, manuals, and handbooks of [GCSU] and of the [University System of Georgia]." *Id.* ¶ 124. Contrary to arguments in his brief, Lamparello does not allege that he had a "tenure-track contract" or a "tenure-track employment contract." *Compare* ECF 4 *with, e.g.,* ECF 16 at 22.

Board of Regents Policy number 8.3.4.2[2], "**Renewal of Non-Tenured Faculty with Academic Ranks of Instructor, Assistant Professor, Associate Professor, and Professor**," provides:

> All non-tenured faculty who have been awarded academic rank (instructor, assistant professor, associate professor, professor), are employed under written contract, and who served full-time for the entire previous year have the presumption of renewal of the next academic year unless notified in writing, by the president of the institution or his or her designee, of the intent not to renew. Written notice of intent not to renew shall be delivered by hand or by certified mail, to be delivered to the addressee only, with receipt to show to whom and when delivered and the address where delivered.

---

[2] In his amended complaint, Lamparello refers to several provisions of the Board of Regents Policy Manual, including the University System of Georgia's freedom of expression policies and the Procedures for Dismissal Policy, quoted below. *See, e.g.*, ECF 4 ¶¶ 111, 114, 116. The amended complaint also provides a link to the Board of Regents' online policy manual. *Id.* at 24 n.6. Yet, in his response brief, Lamparello contends that the Defendants' reference to the policies "merely invites the Court to adjudicate a premature dispute of fact over what policies were or were not followed." ECF 16 at 9. Lamparello urges the Court, if it decides to review the Board of Regents' Policy, to consider the entire policy, including the Procedures for Dismissal provision. *Id.*

Documents attached to a motion to dismiss may be considered if they are: "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). "'Undisputed' in this context means that the authenticity of the document is not challenged." *Id.* According to Lamparello, the Board of Regents Policy Manual was incorporated into his contract and, thus, is essential to his due process claim. And Lamparello does not dispute the authenticity of the Manual; on the contrary, he relies on the named provisions to support his claims. Thus, the Court may consider the Manual without converting this motion to dismiss into a motion for summary judgment.

> …
>
> *Non-tenured faculty and other non-tenured personnel employed under written contract shall be employed only for the term specified in the contract*, and subsequent or future employment, if any, shall result solely from a separate offer and acceptance requisite to execution of a new and distinct contract.

University System of Georgia, Board of Regents Policy Manual, No. 8.3.4.2, https://usg.policystat.com/policy/19685876/latest/#autoid-8k7e8 (last visited August 13, 2026) (emphasis added).

In paragraph 115 of his amended complaint, Lamparello, quoting in part Board of Regents' policy number 8.3.9.1, alleges that a "'non-tenured faculty member' can only be terminated 'provided that the institution … has complied with procedural due process requirements.'" ECF 4 ¶ 115. Missing from Lamparello's partial quote are the words "dismissed before the end of his or her contract term." University System of Georgia, Board of Regents Policy Manual, No. 8.3.9.1, https://usg.policystat.com/policy/19685876/latest/#autoid-8k7e8 (last visited August 13, 2026) (emphasis added). Thus, the policy extends procedural due process rights to professors dismissed during their contract terms.

Because Lamparello relies on policy number 8.9.1 in paragraph 116 of his amended complaint, the Court states paragraph 116 in full:

> Even for non-tenured faculty members during his or her contract term, "preliminary procedures" must include:
>
> 1. Discussion between the faculty member and appropriate administrative officers looking toward a mutual settlement.
>
> 2. Informal inquiry by an appropriate faculty committee which may, upon failing to effect an adjustment, advise the president whether dismissal proceedings should be undertaken, though the advisory opinion shall not be binding upon the president.

3. A letter to the faculty member forewarning that he or she is about to be terminated for cause and informing him or her that a statement of charges will be forwarded to him or her upon request. The faculty member may request a formal hearing on the charges before a faculty committee. Failure to request charges or a hearing within a reasonable time shall constitute a waiver of the right to a hearing.

4. A statement of charges, if requested by the faculty member, framed with reasonable particularity by the President or his or her designee. Along with the charges, the faculty member shall be advised of the names of the witnesses to be used against him or her together with the nature of their expected testimony.

ECF 4 ¶ 116.

Lamparello cites no Board of Regents policy, and the Court has not found one, that affords due process protection for a non-tenured faculty member outside of their contract term.

**D. Procedural History**

Lamparello filed this action on October 27, 2025. ECF 1. Lamparello filed his first amended complaint on November 18, 2025. ECF 4. In his amended complaint, Lamparello asserts three claims: (1) a 42 U.S.C. § 1983 First Amendment retaliation claim against Cathy Cox, Indiren Pillay, and Amy Phillips in their individual and official capacities and against T. Dallas Smith, Holly Roberts, and Karin Elliot in their official capacities; (2) a § 1983 due process claim against Cox, Pillay, and Phillips in their individual capacities; and (3) a breach of contract claim against the Board of Regents. *Id.* ¶¶ 130-172. In Count One, Lamparello seeks compensatory damages, injunctive relief "including but not limited to reinstatement," and punitive damages. *Id.* ¶¶ 149-150. In Count Two, he seeks "reinstatement" and nominal and punitive damages.[3] *Id.* ¶¶ 158-59. In Count Three, Lamparello seeks only compensatory damages. *Id.* ¶ 172.

[3] Lamparello does not explain how individual-capacity defendants can provide "reinstatement" relief.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain “a short and plain statement of the claim showing that the pleader is entitled to relief.” Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), “a complaint must contain sufficient factual matter … to ‘state a claim to relief that is plausible on its face.’” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when “the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Id*. “Factual allegations that are ‘merely consistent with a defendant’s liability’ fall short of being facially plausible.” *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

At the motion to dismiss stage, “all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.” *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But “conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.” *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must “give the defendant fair notice of what the … claim is and the grounds upon which it rests.” *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47(1957). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Although qualified immunity provides government officials with a formidable shield, their entitlement to raise that shield is not automatic.… [T]he official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). The Defendants maintain, and Lamparello does not dispute, that they acted within their discretionary authority, so the burden shifts to Lamparello. ECF 15 at 16-17.

To overcome a qualified immunity defense, the plaintiffs must plausibly allege that (1) the facts, viewed in their favor, establish a constitutional violation; and (2) the Defendants violated rights that were clearly established at the time of the alleged violation. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). This two-step analysis may be done in whatever order is deemed most appropriate for the case. *Lewis*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Lamparello can show the illegality of the Defendants' conduct was clearly established in one of three ways: (1) by pointing to a materially similar case decided by the Supreme Court, Eleventh Circuit, or relevant state supreme court at the time; (2) by

identifying a broader, clearly established legal principle that applies to the facts of the case; or (3) by showing the conduct was so plainly unconstitutional that prior case law is unnecessary. *Stalley v. Cumbie*, 124 F.4th 1273, 1284 (11th Cir. 2024) (collecting cases).

## III. DISCUSSION

### A. First Amendment Retaliation

In Count I, Lamparello asserts a First Amendment retaliation claim against Cox, Pillay, and Phillips in their individual and official capacities, and against Smith, Roberts, and Elliot in their official capacities. ECF 4 ¶¶ 130-150. The Defendants contend that Lamparello's speech is not protected under the First Amendment and, thus, he fails to state a claim. ECF 15 at 6-10. The Defendants, sued in their individual capacities, also argue that Lamparello's claims for damages against them are barred by qualified immunity. ECF 15 at 16-19.

#### *1. Failure to State a Claim*

"While a citizen who enters public service 'must accept certain limitations on [his] freedom[s],' … [he] does not 'relinquish the First Amendment rights [he] would otherwise enjoy as [a citizen] to comment on matters of public interest.'" *Alves v. Board of Regents of the Univ. System of Ga.*, 804 F.3d 1149, 1159 (11th Cir. 2015) (first quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006), then quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). Generally, in the context of a public employee's speech, the Eleventh Circuit "employ[s] a two-step framework grounded" in *Pickering v. Board of Education* and *Garcetti v. Ceballos*. *Wood v. Fl. Dep't of Educ.*, 142 F.4th 1286, 1289 (11th Cir. 2025).

First, under *Garcetti*, courts ask "whether the employee spoke as a citizen on a matter of public concern." *Alves*, 804 F.3d at 1159 (quoting *Garcetti*, 547 U.S. at 418). "*Garcetti's* threshold layer looks at both the role the speaker occupied and the content of the speech to determine whether the government retaliation at issue warrants the *Pickering* analysis." *Id.* at 1160 (citation modified). "If the employee spoke as an employee and on matters of personal interest, the First Amendment is not implicated, and 'the constitutional inquiry ends.'" *Id.* (quoting *Boyce v. Andrew*, 510 F.3d 1333, 1343 (11th Cir. 2007)). However, "If the employee spoke as a citizen and on a matter of public concern, 'the possibility of a First Amendment claim arises,'" and the court proceeds to step two. *Id.* (quoting *Garcetti*, 547 U.S. at 418). Step two, the *Pickering* analysis, requires the employee to demonstrate that his "interest in speaking outweighs the state's interests in promoting the efficient delivery of public services." *Wood*, 142 F.4th at 1290 (citing *Pickering*, 391 U.S. at 568).

In *Garcetti*, the Supreme Court recognized that its new government-employee speech analytical construct might not fit neatly with speech in the academic setting. 547 U.S. at 425. That, though, was a question not before the Court. *Id*. "We need not, and for that reason do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching." *Id.* Here, Lamparello's speech relates to his teaching, and the parties vigorously debate just what that relationship is and what it means. However, as discussed below, they overlook binding Eleventh Circuit precedent setting the terms and parameters of their debate. Moreover, they do not note the Eleventh Circuit's answer, handed down after their

briefing, to their fundamental question—does the Circuit recognize an academic exception to *Garcetti*?

The answer to that specific question is a narrow yes. In *Pernell v. Florida Board of Governors of the State University,* the Eleventh Circuit held that *Garcetti* does not "extend[], full-force, to professors teaching in classrooms, thereby qualifying their lectures as 'employee speech' subject to control and discipline well beyond what the First Amendment would otherwise allow." 181 F.4th 1135, 1149 (11th Cir. 2026). Thus, *Pernell's Garcetti*-related holding is limited to classroom teaching. Moreover, *Pernell's* facts are extreme—Pernell addressed a broad prior restraint on professors' classroom speech rather than after-the-fact discipline for speech—and narrow even more the Court's holding. "But if there is anything *Garcetti* cannot cover, it is broad legislative bans on disfavored speech—not if academic freedom has any constitutional weight at all." *Id.* at 1154.

Nevertheless, in the other Eleventh Circuit case not cited by the parties—*Bishop v. Aronov,* 926 F.2d 1066 (11th Cir. 1991)—the Court fashioned a balancing test that accounts for post-secondary academic speech. Because *Bishop* was decided before *Garcetti*, the Circuit in *Pernell* first considered whether the speech at issue there fell within an academic exception to *Garcetti* and, as discussed, concluded that it did. 181 F.4th at 1150-54. The Court then applied the *Bishop* balancing test. *Id.* at 1158-64. This Court follows suit.

*Pernell's* narrow holding does not foreclose *Garcetti's* application to this case. *See Pernell*, 181 F.4th at 1154 ("To be sure, *Garcetti* may still apply to a professor's speech in another context, including when that speech impedes the proper

administration of the school."). Thus, the Court must determine whether Lamparello has plausibly alleged his speech is protected despite *Garcetti*. *Garcetti* requires a fact-intensive "'functional review' of [Lamparello's speech] in relation to [his] duties or responsibilities" as a professor. *Alves*, 804 F.3d 1149, 1164; *see also Carollo v. Boria*, 833 F.3d 1322, 1332 (11th Cir. 2016) ("[E]ach of the relevant cases from the Supreme Court and this Circuit to undertake *Garcetti's* 'practical inquiry' concerning whether a plaintiff spoke pursuant to ordinary job responsibilities or as a citizen did so at the summary judgment stage or later in the life of the case"). Courts consider several non-dispositive factors when determining whether an individual spoke as an employee or a citizen, including "the employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job." *Alves*, 804 F.3d at at 1161. "[T]he 'controlling factor' is whether the employee's statements or expressions were made 'pursuant to [his] official duties.'" *Id.* (quoting *Garcetti*, 547 U.S. at 421.) (citation modified). However, *Garcetti* does not necessarily apply to speech that "simply relates to public employment or concerns information learned in the course of public employment." *Lane v. Franks*, 573 U.S. 228, 239 (2014).

Here, Lamparello alleges he sent a post expressing frustration and requesting advice on difficult, plagiaristic students to a listserv popular among professors and lawyers using his private email. ECF 4 ¶ 41. Lamparello's speech certainly relates to his employment. Indeed, his allegations arguably draw a straight line between the classroom and his listserv post. But without the benefit of discovery, perhaps limited discovery, the Court cannot conduct the fact-intensive *Garcetti* inquiry, and it cannot hold as a matter of law that *Garcetti* bars Lamparello's First Amendment claim.

Therefore, the Court turns to *Bishop* to balance the First Amendment interests of employer and employee in the post-secondary education setting.[4]

In *Bishop*, university administrators instructed a professor to refrain from interjecting his religious beliefs during required and optional instruction periods. *Bishop*, 926 F.2d at 1068-69. To resolve the professor's First Amendment challenge to that instruction, the Court balanced three factors: (1) context; (2) "the University's position as a public employer which may reasonably restrict the speech rights of employees more readily than [ ] those of other persons"; and (3) "the strong predilection for academic freedom as an adjunct of the free speech rights of the First Amendment." 926 F.2d at 1074-75.

First, unlike the professor in *Bishop*, Lamparello did not speak in the classroom. This factor could cut both ways. Because Lamparello spoke outside of the classroom, there arguably is less concern that his speech would have the "coercive effect upon students that a professor's speech inherently possesses." *Bishop*, 926 F.2d at 1074. On the other hand, the vehemence of Professor Lamparello's speech about his students arguably is coercive and implicates concerns of reputational harm to GCSU students that "the University may wish to avoid." *Id.* The second and third factors, the University's interest and "the strong predilection for academic freedom," overlap. *Bishop*, 926 F.2d

[4] *Pernell* did not address whether the factors test in *Bishop* or the balancing test in *Pickering* applies to a professor's academic-related speech outside of the classroom. The Court gives Lamparello the benefit of the doubt and assumes that *Bishop* applies to his listserv post. But either way, the result on a motion to dismiss is the same. "The *Pickering* test seeks to arrive at a balance between the employee's interest in commenting on matters of public concern and his employer's interest in efficiently providing public services." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 621 (11th Cir. 2015). Courts consider "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time, and place of the speech, and (3) the context within which the speech was made." *Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 712 (11th Cir. 1992). Like the *Bishop* factors, factual development is necessary for the Court to properly perform the *Pickering* balancing test.

at 1075. Again, GCSU certainly had an interest in preventing Lamparello from publicly criticizing its pre-law students, particularly to legal professors and lawyers. However, professors also have an academic interest in discussing solutions to issues they face in their work, including perceived trends in their students' scholarship. Given these competing interests, the *Bishop* factors clearly need more factual development. But, for now, Lamparello's allegations create a reasonable inference that his speech is protected and, thus, he has stated a First Amendment retaliation claim.

*2. Qualified Immunity*

Having determined that Lamparello has stated a First Amendment claim, the Court now considers whether the Defendants sued in their individual capacities are entitled to qualified immunity. They are.

Again, Lamparello can show his First Amendment right was clearly established in one of three ways: (1) by pointing to a materially similar case decided by the Supreme Court, Eleventh Circuit, or relevant state supreme court at the time; (2) by identifying a broader, clearly established legal principle that applies to the facts of the case; or (3) by showing the conduct was so plainly unconstitutional that prior case law is unnecessary. *Stalley v. Cumbie*, 124 F.4th 1273, 1284 (11th Cir. 2024) (collecting cases). "It is particularly difficult to overcome the qualified immunity defense in the First Amendment context." *Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017). "Because the analysis of First Amendment retaliation claims under the *Pickering-Connick* test involves legal determinations that are intensely fact-specific and do not lend themselves to clear, bright-line rules … a defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful." *See Maggio v. Sipple*, 211 F.3d 1346, 1355 (11th Cir.

2000) (citation modified). “[T]he employer is entitled to immunity except in the extraordinary case where Pickering balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful.” *Dartland v. Metropolitan Dade Cnty.*, 866 F.2d 1321, 1323 (11th Cir. 1989).

Lamparello does not argue that the Defendants’ conduct was so plainly unconstitutional that prior case law is unnecessary or that a broader, clearly established principle applies to the facts of this case.[5] Thus, Lamparello must identify a materially similar case that clearly establishes his right under the First Amendment.

First, it is not clearly established that Lamparello’s speech is protected academic speech under the First Amendment. Before July 2026, the Eleventh Circuit had not addressed *Garcetti’s* application to a professor’s speech. Thus, at the time of the alleged retaliation, an academic speech exception to *Garcetti* was not clearly established in the Eleventh Circuit. For what it's worth, it still is not clearly established that Lamparello’s speech would get a *Garcetti* pass. If anything, *Pernell* clearly establishes that his listserv post falls far outside any possible academic exception. *Pernell* made clear that “*Garcetti* may still apply to a professor’s speech in another context, including when that speech impedes the proper administration of the school.”

[5] To be sure, Lamparello argues in his reply brief that other circuits have held “that no qualified immunity applies in cases like this because precedent so clearly protects the speech of academics.” ECF 16 at 16. He then cites cases from the Fourth and Seventh Circuits. Those cases are distinguishable. In both, the circuits noted a pre-*Garcetti* precedent that *Garcetti*’s holding left untouched, which the circuits found clearly established the constitutional right at issue. *See Adams v. Trs. of the Univ. of N. Carolina-Wilmington*, 640 F.3d 550, 566 (4th Cir. 2011); *Kilborn v. Amiridis*, 131 F.4th 550, 558 (7th Cir. 2025). In *Adams*, the clearly established right was an employee's right to speak as a citizen on a matter of public concern. *Adams*, 640 F.3d at 566. Here, however, it is not clear whether Lamparello spoke either as a citizen or on a matter of public concern. And in *Kilborn*, the Seventh Circuit recognized that qualified immunity may still be appropriate where there is genuine uncertainty as to whether the particular speech falls within the academic exception. 131 F.4th at 558. The speech in *Kilborn* involved an exam question and in-class speech. Lamparello’s listserv post is much less obviously central to teaching. Finally, even if the Court found Lamparello’s reliance on these out-of-circuit cases persuasive, the Eleventh Circuit has different pre-*Garcetti* precedent governing academic speech.

*Pernell*, 181 F.4th at 1154. In short, no clearly established law provided notice to the Defendants on whether or how *Garcetti* might apply in the academic setting.

The question then is whether it was clearly established that Cox, Pillay, or Phillips violated Lamparello's First Amendment rights when they acted in response to his listserv post. Lamparello argues that "the Court need to look no further than *Pickering*" to find clearly established law because, he claims, *Pickering's* facts are "almost identical to those raised by Lamparello." ECF 16 at 19-20. However, *Pickering* does not come close to providing notice to the Defendants that their actions were unconstitutional. In *Pickering*, the plaintiff, a high school teacher, wrote a letter to a local newspaper criticizing the school board's financial management of the school district, particularly its allocation of bond issue revenues for athletics rather than educational needs. 391 U.S. at 565-66. The letter followed the failure of a recent bond referendum. *Id.* The school board dismissed the plaintiff for writing the letter. *Id.* at 566. After balancing the plaintiff's interest in free speech with the defendants' interest in orderly school administration, the Court held that the plaintiff's First Amendment rights were violated. *Id.* at 568-73. The facts here are not at all "almost identical." Lamparello's post complained about, indeed maligned, his students. ECF 4 ¶ 43. His speech was not a message to the public on a matter of public interest, like school funding and spending.[6] *Id.* And, as discussed, Lamparello overlooks *Bishop*, which establishes that, depending

---

[6] *See Pickering*, 391 U.S. at 571-72 ("[T]he question whether a school system requires additional funds is a matter of legitimate public concern on which the judgment of the school administration, including the School Board, cannot, in a society that leaves such questions to popular vote, be taken as conclusive. On such a question free and open debate is vital to informed decision-making by the electorate.").

on the facts, even classroom speech can be restricted.[7] Thus, the Circuit's then-leading case on academic speech certainly did not provide notice to the defendants that their actions were unconstitutional. In short, Lamparello cites no clearly established authority that put the Defendants on notice that they acted unlawfully when they disciplined Lamparello for the airing of his opinions about his students' integrity and merit. Accordingly, Cox, Pillay, and Phillips are entitled to qualified immunity from Lamparello's claims for damages.[8]

Qualified immunity does not, however, bar claims for injunctive relief. *Lane v. Central Alabama Community College*, 772 F.3d 1349, 1351 (11th Cir. 2014); *Raliff v. DeKalb Cnty, Ga.*, 62 F.3d 338, 340 n.4 (11th Cir. 1995). Because Lamparello has stated a First Amendment claim, and the Defendants do not argue he cannot seek injunctive relief, his claims for injunctive relief under the First Amendment will proceed.

---

[7] In another Eleventh Circuit case handed down after the parties' briefing, the Court affirmed a district court's denial of qualified immunity to Miami City Commissioners, finding that the plaintiff plausibly alleged a First Amendment retaliation claim and that there was a violation of clearly established law. *Acevedo v. City of Miami*, 2026 WL 2508872 (11th Cir. 2026). That does not affect this Court's qualified immunity analysis for several reasons. First, it is not an academic speech case. Second, the Court found that the plaintiff spoke as a citizen on a matter of public concern and that the speech did not disrupt the "efficient provision of government services," *Id.* at *11. In Lamparello's case, it is unclear whether he spoke as a citizen and unlikely that he spoke on a matter of public concern. The Court in *Acevedo* also emphasized that nothing in the complaint tipped the *Pickering* scale in the government's favor, since the firing was only for the unlawful purpose of "harassing and chilling a whistleblower." *Id.* Lamparello alleges facts that tip the balance in the defendant's favor: that the defendants issued a terminal contract out of concern for the University's image and possibility of hindering students' ability to be accepted to law school. ECF 4 ¶¶ 7, 19, 35, 48, 72, 73, 75, 102, 107, 141, 142, 143, 146. Most importantly, *Acevedo* is a classic whistleblower-retaliation case; its facts bear no resemblance to the facts here.

[8] Lamparello also asserts claims for damages against the Defendants in their official capacities. ECF 14 at 24. However, "[S]tate officials sued for damages in their official capacity" are also entitled to Eleventh Amendment immunity regarding Lamparello's claims for damages. *Jackson v. Georgia Dept. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). Moreover, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, Lamparello's First Amendment claims for damages against the Defendants sued in their official capacities are dismissed.

Because Cox, Pillay, and Phillips are entitled to qualified immunity, Lamparello's First Amendment claim against them for damages is **DISMISSED with prejudice**. Otherwise, the Defendants' motion to dismiss Count I is **DENIED**.

**B. Due Process**

In Count II, Lamparello asserts a procedural due process claim under § 1983 against Defendants Cox, Pillay, and Phillips in their individual capacities. ECF 4 ¶¶ 151-159. The Defendants contend that Lamparello has failed to state a claim, and that his claims for damages are barred by qualified immunity. ECF 15 at 10-18.

*1. Failure to State a Claim*

To state a procedural due process claim, a plaintiff must plead facts showing: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Barnes v. Zaccari*, 669 F.3d 1295, 1302 (11th Cir. 2012). The only element in dispute here is whether Lamparello was deprived of a constitutionally protected liberty or property interest. *See* ECF 15 at 10-15; 16 at 21. "A person claiming a property interest in a benefit 'must have more than an abstract need or desire for it .... He must … have a legitimate claim of entitlement to it.'" *Gray v. Bd. of Regents of the Univ. Syst. of Ga*, 150 F.3d 1347, 1350 (11th Cir. 1998) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "[P]roperty interests, by their nature, are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source of state law.'" *Id.* (quoting *Roth*, 408 U.S. at 577). Lamparello's

"'property' interest in employment, if any, was created and defined by the terms of [his] contract." *Id.* at 1350-51.

First, Lamparello does not allege the terms of his contract or attach it to his amended complaint. That alone warrants dismissal of his due process claim—how can the Court determine whether he plausibly alleges a protected property interest created by his employment contract without knowing the terms of his contract? The reason Lamparello failed to disclose the terms of his contract seems obvious. Board of Regents' policies make clear that faculty contracts are standardized. Lamparello's reference to and incorporation of those regulations, and his vague allegations about his contractual status, suggest that he had a series of one-year contracts followed by a one-year terminal contract and that he was not terminated during the term of any contract. Nevertheless, the Court will address his allegations and arguments, including those that do not align with the allegations of his amended complaint.

In his amended complaint, Lamparello alleges he "had a property right in his tenure-track position." ECF 4 ¶ 152. Lamparello further alleges that GCSU deprived him of due process because it failed to follow the procedures outlined in Board of Regents Policy 8.3.9. *Id.* ¶¶ 154, 156. Then, in his response brief, Lamparello claims he had a "tenure-track contract" or a "tenure-track employment contract," and that he could only be terminated for cause. ECF 16 at 22. However, nowhere in his amended complaint does Lamparello allege he had a tenure-track contract. He alleges only that he was promoted to a tenure-track position in 2021. ECF 4 ¶ 96. But he does not allege what, if anything, his contract said regarding his tenure-track status.

In his response brief, Lamparello also claims his amended complaint "adequately

pleaded that he could be fired only for cause. SAC, ¶ 116." ECF 16 at 22. But paragraph 116 of his amended complaint makes no such allegation. As stated, paragraph 116 simply quotes Board of Regents policy. Instead, Lamparello alleges that he was issued a "terminal year contract," which meant he "could finish out the year, but was canceled from the tenure track and told this year would be his last." ECF 4 ¶¶ 82; 138. GCSU's alleged removal of Lamparello's "tenure-track status," whatever that may be, and its issuance of a terminal year contract is not the same as terminating Lamparello during his contract term.

Because Lamparello has not alleged he was terminated during his contract term, he has not plausibly alleged that he could not be terminated without cause. Board of Regents' policy 8.3.9.1, where Lamparello claims he finds the for-cause requirement, only applies when "a tenured or non-tenured faculty member [is] dismissed *before the end of his or her contract*." University System of Georgia, Board of Regents Policy Manual, No. 8.3.9.1, https://usg.policystat.com/policy/19685876/latest/#autoid-8k7e8 (last visited August 10, 2026) (emphasis added); ECF 4 ¶¶ 114-116, 138; 16 at 22-24. Thus, Lamparello has not plausibly alleged that his termination violated Board of Regents policy.

Nor has Lamparello plausibly alleged he had a property interest in his "tenure-track position." The Eleventh Circuit addressed whether a nontenured professor has a property interest in tenure in *Gray v. Board of Regents of the University System of Georgia*. In *Gray*, the plaintiff signed eight successive one-year contracts as an assistant professor. 150 F.3d at 1349. During Gray's eighth contract year, she applied for tenure. *Id.* She was not granted tenure and was therefore offered a ninth contract

marked as her "final contract." *Id.* Gray argued that she had a property interest in tenure protection because, under the Board of Regents' Policy Manual, she had exceeded the maximum number of years an associate professor could remain employed without being awarded tenure status. *Id.* at 1351. The Eleventh Circuit held she had no property right to tenure because her contract terms did not grant her that right, stating: "The institution of tenure has an inexorable logic: the very existence of a tenure system means that those teachers without tenure are not assured of continuing employment." *Id.* at 1353 (quoting *Staheli v. University of Mississippi*, 854 F.2d 121, 124 (5th Cir. 1976). Similarly, the Supreme Court of the United States has held that a non-tenured professor has no property interest in re-employment when his contract terms, university policies, and state law do not create any legitimate right to renewal of an employment contract. *See Roth*, 408 U.S. at 576-79; *see also Wu v. Thomas*, 847 F.2d 1480, 1484 (11th Cir. 1988) ("[A] prospective promotion is not a property or liberty interest protected by the fourteenth amendment."). Lamparello attempts to distinguish *Gray* and *Roth* because those cases did not involve "the termination of an existing tenure-track employment contract prior to its term." ECF 16 at 24. Again, Lamparello's amended complaint does not allege that he had a tenure-track employment contract or that he was terminated before his contract term ended.

Clearly, despite his attempt in his brief to argue he had a tenure-track employment contract, Lamparello does not plausibly allege that he was terminated during his contract term or that he had a protected property interest in his "tenure-track position." Thus, Lamparello has failed to state a procedural due process claim.

*2. Qualified Immunity*

Lamparello makes no effort to cite clearly established law that put Cox, Pillay, or Phillips on notice that their actions deprived Lamparello of a protected property interest. Nor has the Court found any. On the contrary, as stated above, a non-tenured professor has no property right in continued employment when his one-year contract contains no clause guaranteeing renewal. *Gray*, 150 F.3d at 1350-52; *Roth*, 408 U.S. at 576-79. Thus, it is not clearly established that Lamparello had a property right in continued employment, and Cox, Pillay, and Phillips are entitled to qualified immunity on Lamparello's due process claims.

Lamparello's due process claim for damages is **DISMISSED with prejudice**. Otherwise, Lamparello's due process claim is **DISMISSED without prejudice** for failure to state a claim.

**C. Breach of Contract**

Finally, the Board of Regents argues that Eleventh Amendment Immunity and sovereign immunity bar Lamparello's breach of contract claim (Count III). ECF 15 at 19-20. In his response brief, Lamparello does not mention his breach of contract claim or address the Defendants' arguments. It is well established that, absent waiver, breach of contract claims against the state of Georgia in federal court are barred by the Eleventh Amendment. *See Barnes v. Zaccari,* 669 F.3d 1295, 1309 (2012); *Nicholl v. Bd. Of Regents of the Univ. Sys. of Ga.*, 706 Fed. Appx. 493 (11th Cir. 2017). ("The Board [of Regents] is considered a state entity that is an arm of the state of Georgia for purposes of the Eleventh Amendment, and, therefore, is entitled to sovereign immunity."*).* "The standard for waiver of Eleventh Amendment immunity is an exacting one." *Austin v.*

*Glynn Cnty.*, 80 F.4th 1342, 1351 (2023). "A waiver of Eleventh Amendment immunity must specifically permit suits in federal court." *Barnes*, 669 F.3d at 1308 (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990)). Georgia has not waived its Eleventh Amendment immunity from suit in federal court for breach-of-contract claims. *Id.; Austin*, 80 F.4th at 1351.

Accordingly, Lamparello's breach of contract claim (Count III) is **DISMISSED**.

## IV. CONCLUSION

The Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

Lamparello has stated a First Amendment claim, and that claim shall proceed in part. Lamparello's First Amendment claim for damages against Cox, Pillay, and Phillips in their individual capacities is **DISMISSED with prejudice** because they are entitled to qualified immunity. Lamparello's due process claim for damages against Cox, Pillay, and Phillips in their individual capacities is **DISMISSED with prejudice** for the same reason. Otherwise, that claim is **DISMISSED without prejudice** for failure to state a claim. Finally, Lamparello's breach of contract claim against the Board of Regents of the University System of Georgia is **DISMISSED**.[9]

**SO ORDERED**, this 11th day of September, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

[9] Lamparello substituted Board of Regents of the University System of Georgia for the improperly joined Georgia College and State University and University System of Georgia Board of Regents. The Clerk is **DIRECTED** to terminate those parties.