**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ADAM LAMPARELLO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:26-cv-02646-SLS |
| | ) | |
| v. | ) | |
| | ) | |
| BILLIE JO KAUFMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

RECEIVED
OCT 16 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iv

INTRODUCTION .......... 1

STATEMENT OF THE PLEADED FACTS .......... 3

A. Plaintiff's record before the publication. .......... 3

B. The listserv post. .......... 4

C. The disclosure and the accusation. .......... 4

D. The institutional consequences. .......... 5

LEGAL STANDARD .......... 6

ARGUMENT .......... 8

I. THE CHALLENGED SENTENCE IS A VERIFIABLE ACCUSATION OF FACT, NOT PROTECTED OPINION. .......... 8

A. "I believe" does not convert an accusation into an opinion. .......... 8

B. "I forget the details" implies that details existed. .......... 10

C. Context confirms the factual meaning. .......... 12

II. THE ACCUSATION IS CAPABLE OF DEFAMATORY MEANING AND IS DEFAMATORY PER SE. .......... 13

A. The standard is capability, and this charge meets it. .......... 13

B. The D.C. Circuit rejected analogous range-of-meanings reasoning in May 2026. .......... 14

C. The accusation falls within the professional-fitness category of defamation per se. .......... 15

D. Falsity is pleaded, and the Motion offers no basis to doubt it. .......... 16

III. THE MOTION'S CHARACTER MATERIALS CANNOT BE CONSIDERED FOR THEIR TRUTH AND WOULD NOT HELP DEFENDANT IF THEY COULD. .......... 17

A. The memoir, the blog post, and the article cannot be considered for their truth. .......... 17

B. The materials answer nothing. .......... 19

IV. NO PRIVILEGE CAN BE RESOLVED IN DEFENDANT'S FAVOR ON THE PLEADINGS. .......... 20

A. The predicates of the common-interest privilege are not established on the face of the FAC. .......... 20

B. The Motion's reporting-rule analogies refute the duty it asserts. .......... 23

C. In all events, the FAC plausibly pleads that any privilege was abused. ................23

D. Fair comment does not protect an undisclosed accusation of fact. ........................26

V. FAULT IS ADEQUATELY PLEADED. ............................................................27

VI. THE FAC PLAUSIBLY PLEADS ACTIONABLE HARM AND CAUSATION. .........29

A. Count I requires no proof of special damages. .....................................................30

B. Count II identifies a specific economic loss. ........................................................31

C. The pleaded causal sequence is clear, logical, and factually grounded. ................32

D. The Motion's alternative explanation raises a fact question, not a pleading defect. ....................................................................................................34

VII. JUDICIAL ESTOPPEL DOES NOT APPLY. ..................................................36

VIII. DISMISSAL WITH PREJUDICE WOULD BE UNWARRANTED. .............................37

CONCLUSION ....................................................................................................38

# TABLE OF AUTHORITIES

## Cases

*Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328 (D.C. Cir. 2015)........................................8

*Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*,
374 A.2d 284 (D.C. 1977) ........................................................................2, 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................6

*Banneker Ventures, LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) ........................................34

*Bauman v. Butowsky*, 377 F. Supp. 3d 1 (D.D.C. 2019)........................................................9

*Beeton v. District of Columbia*, 779 A.2d 918 (D.C. 2001) ..................................................7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................6, 31

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ..................................................31

*Carey v. Piphus*, 435 U.S. 247 (1978) ........................................................................15

*Carter v. Hahn*, 821 A.2d 890 (D.C. 2003) ..................................................................24

*Castillo Butters v. National Academy of Sciences*,
176 F.4th 43 (D.C. Cir. 2026)........................................................2, 3, 7, 9, 13, 14, 16, 36

*Chishti v. Spottiswoode*, 181 F.4th 92 (D.C. Cir. 2026) ..................................................27

*Cianci v. New Times Publishing Co.*, 639 F.2d 54 (2d Cir. 1980) ......................................2, 8

*Columbia First Bank v. Ferguson*, 665 A.2d 650 (D.C. 1995) ......................................24, 25

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) ..........................30

*EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621 (D.C. Cir. 1997)......................7, 17

*Fells v. Service Employees International Union*, 281 A.3d 572 (D.C. 2022) ..........................15

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996)..................................................7, 37

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................................38

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ..................................................28, 30

*Global Network Communications, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006)........................................................................7, 18

*Goodrich v. Bank of America, N.A.*, 136 F.4th 347 (D.C. Cir. 2025)......................................7

*Guilford Transportation Industries, Inc. v. Wilner*,
760 A.2d 580 (D.C. 2000) ....................................................7, 8, 12, 13, 14

*Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th Cir. 1993) ..............................................11

*Hettinga v. United States*, 677 F.3d 471 (D.C. Cir. 2012)..............................................6, 18

*Howard University v. Best*, 484 A.2d 958 (D.C. 1984) ..................................................13

*Jarrell v. United States Postal Service*, 753 F.2d 1088 (D.C. Cir. 1985)..................................37

*Jones v. Bock*, 549 U.S. 199 (2007)........................................................................7, 20

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) ..................................................7, 17

*Kareem v. Haspel*, 986 F.3d 859 (D.C. Cir. 2021) ....................35

*Kendrick v. Fox Television*, 659 A.2d 814 (D.C. 1995) ....................28

*KLEO AG v. Rivada Networks, Inc.*, 148 F.4th 741 (D.C. Cir. 2025)....................15, 16, 29–33, 35

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ....................36

*Lacy v. District of Columbia*, 424 A.2d 317 (D.C. 1980)....................35

*Lamparello v. Cox*, No. 5:25-cv-00469 (M.D. Ga. Sept. 11, 2026), ECF No. 18 ....................37

*Levy v. American Mutual Liability Insurance Co.*, 196 A.2d 475 (D.C. 1964)....................7, 14

*Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563 (D.C. Cir. 1984), *vacated on other grounds*, 477 U.S. 242 (1986)....................19

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991)....................19

*Mastro v. Potomac Electric Power Co.*, 447 F.3d 843 (D.C. Cir. 2006)....................8, 22, 24, 26

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ....................2, 8–11, 27, 29

*Moldea v. New York Times Co.*, 22 F.3d 310 (D.C. Cir. 1994) ....................8, 10

*Mosrie v. Trussell*, 467 A.2d 475 (D.C. 1983) ....................24

*Moss v. Stockard*, 580 A.2d 1011 (D.C. 1990) ....................20, 21, 24, 28

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ....................36

*Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984) (en banc) ....................12

*Oparaugo v. Watts*, 884 A.2d 63 (D.C. 2005) ....................7

*Passantino v. Weissmann*, 752 F. Supp. 3d 168 (D.D.C. 2024) ....................9

*Passantino v. Weissmann*, No. 23-cv-2780 (LLA), slip op. (D.D.C. Sept. 21, 2026), ECF No. 53....................28, 29

*Payne v. Clark*, 25 A.3d 918 (D.C. 2011)....................20, 22, 24, 26

*Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163 (D.D.C. 2010) ....................18

*Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009) ....................9

*Smith v. Clinton*, 886 F.3d 122 (D.C. Cir. 2018) (per curiam) ....................16

*St. Amant v. Thompson*, 390 U.S. 727 (1968)....................29

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ....................34

*Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) (en banc) ....................26

*Washburn v. Lavoie*, 437 F.3d 84 (D.C. Cir. 2006)....................21

*Washington v. Smith*, 80 F.3d 555 (D.C. Cir. 1996)....................11

*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) ....................13

*Wright v. Eugene & Agnes E. Meyer Foundation*, 68 F.4th 612 (D.C. Cir. 2023)....................2, 7, 8, 10, 11, 13, 23–26, 28

**Rules**

Fed. R. Civ. P. 8(d)(2) ....................32
Fed. R. Civ. P. 8(d)(3) ....................36
Fed. R. Civ. P. 9(g) ....................31, 33
Fed. R. Civ. P. 12(b)(2), 12(b)(3) ....................8
Fed. R. Civ. P. 12(b)(6) ....................1, 6, 8, 9, 37
Fed. R. Civ. P. 12(d) ....................19, 38
Fed. R. Civ. P. 12(g)(2), 12(h)(1)(A) ....................8
Fed. R. Civ. P. 15(a)(2) ....................37, 38
Fed. R. Civ. P. 56(d) ....................19, 38
Fed. R. Evid. 201(b) ....................7, 17
LCvR 15.1 ....................38

**Other Authorities**

ABA Standards & Rules of Procedure for Approval of Law Schools, Standard 404(b) (2026–2027) ....................23
D.C. Rules of Professional Conduct r. 8.3(a) ....................23
Restatement (Second) of Torts § 431 (Am. L. Inst. 1965) ....................35
Restatement (Second) of Torts § 576 (Am. L. Inst. 1977) ....................33
Restatement (Second) of Torts § 578 & cmt. e (Am. L. Inst. 1977) ....................11
Restatement (Second) of Torts § 594 (Am. L. Inst. 1977) ....................21
Restatement (Second) of Torts § 595 (Am. L. Inst. 1977) ....................22
Restatement (Second) of Torts § 596 (Am. L. Inst. 1977) ....................21

## INTRODUCTION

The law does not permit a defendant to escape liability for a false accusation of professional misconduct by prefacing it with "I believe" and closing it with "I forget the details." Nor does Rule 12(b)(6) permit a movant to substitute a biography of the plaintiff for the facts he has pleaded. The question is whether the First Amended Verified Complaint plausibly alleges an actionable false statement, unprivileged publication, the requisite fault, and actionable harm—not whether Plaintiff has already proved them. It does.

Defendant Billie Jo Kaufman, a stranger to Plaintiff's institution, told Georgia College President Cathy Cox that Plaintiff had been harassing women faculty by email, and in the same sentence said that she could not remember the details: "I believe he was harrassing [*sic*] women faculty with emails last yr but I forget the details." First Am. Verified Compl. ("FAC") ¶¶ 2, 37, ECF No. 5. The next morning, Cox wrote that she had forwarded "this info" to human resources "for their ongoing investigation into this faculty member." *Id.* ¶ 45. Defendant now asks the Court to hold that the words framing the accusation strip it of legal consequence. Hedges at both ends do not hollow out the charge in the middle.

The accusation was false. *Id.* ¶¶ 3, 40, 43. Defendant had never worked with, supervised, or evaluated Plaintiff, and she identified no email, recipient, complaint, or witness. *Id.* ¶¶ 4, 19–20, 41. She delivered the charge privately to the chief executive of Plaintiff's employer while a human resources investigation of which Plaintiff knew nothing was underway. *Id.* ¶¶ 5, 33, 37, 53. Cox answered that it "would not surprise" her and asked for more. *Id.* ¶ 44. Defendant retracted nothing; she sent the screenshot Cox requested. *Id.* ¶¶ 47–49, 60. Georgia College continued its investigation and later issued Plaintiff a terminal contract. *Id.* ¶ 50.

The Motion never asserts that the accusation is true. It contends that the sentence is "neither false nor defamatory" because it cannot be proved true or false at all. Def.'s Mem. in

Supp. of Mot. to Dismiss ("Mem.") 6, ECF No. 9-1. It identifies no email, no woman, no complaint, and no episode. In their place it offers a biography—a 2012 memoir, a 2013 blog post, and a 2016 law review article—none mentioned in the FAC, and none mentioning a harassing email. Mem. 10–11. The theory, stripped to its essentials, is that a man who has written critically about legal education may be accused of harassing women colleagues without consequence. That is not a defense to defamation. It is a request to try Plaintiff's character in place of Defendant's statement, on a motion that permits the trial of nothing.

The Motion's doctrinal arguments rest on three propositions the law does not support. First, "I believe" is said to convert an accusation into an opinion. But a speaker cannot escape liability "simply by using, explicitly or implicitly, the words 'I think.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990) (quoting *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 64 (2d Cir. 1980)). Second, "I forget the details" is said to convert the accusation into harmless surmise and to show due care. Read naturally, the phrase does the reverse: it implies that details existed and supports the inference that she published without them. Third, a stranger's unsolicited message is said to be a privileged report. But the privilege "exists only if the publisher believes, with reasonable grounds, that [the] statement is true." *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 624–25 (D.C. Cir. 2023) (quoting *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 290 (D.C. 1977)). A speaker who concedes, in the same sentence, that she cannot supply the particulars of her charge does not establish that privilege on the face of the complaint.

In May 2026, the D.C. Circuit rejected analogous reasoning, holding that a statement invoking a conduct code provision that reaches sexual harassment was capable of defamatory meaning even though the provision also covers "some less serious conduct." *Castillo Butters v.*

*National Academy of Sciences*, 176 F.4th 43, 49–50 (D.C. Cir. 2026). The Motion's argument that "harass" can also mean "to annoy persistently," Mem. 9, fails for the same reason—and with greater force. Defendant did not cite a code that happens to mention harassment. She used the word herself, and she attached it to "women faculty."

Defendant calls this a "petty" case about a "sixteen-word remark." Mem. 1–2. Defamation is not priced by the word. Those sixteen words accused a professor of harassing women colleagues. They were delivered to the one reader with "ultimate authority" over him, Mem. 13, who by the next morning had forwarded "this info" to the office investigating him—an office that wanted "any more specifics." FAC ¶ 45. The Motion itself calls the message a "collegial disclosure of information material to a teacher's employment," Mem. 2, concerning "possible misconduct," Mem. 13. A statement weighty enough to report to a university president is weighty enough to injure the professor it accuses.

The question presented is narrow: whether the FAC plausibly alleges that Defendant published a false and verifiable accusation of professional misconduct to the chief executive of Plaintiff's employer, without identifying any basis for it, under no privilege established on the face of the pleading, and with resulting harm. It does. The Motion should be denied.

## STATEMENT OF THE PLEADED FACTS

The following allegations of the verified FAC are accepted as true at this stage, with every reasonable inference drawn in Plaintiff's favor.

### A. Plaintiff's record before the publication.

Plaintiff is a licensed New Jersey attorney, a legal scholar, and a former tenure-track Assistant Professor of Law at Georgia College & State University ("Georgia College"). FAC ¶ 16. He has taught for approximately fourteen years and has published more than sixty-five scholarly works, including four co-authored books. *Id.* His chair's evaluations described his

work as "excellent" and "overwhelmingly positive"; he received sixteen Thank-a-Teacher recognitions and his department's Outstanding Teaching Award; and his pre-tenure review rated him as exceeding expectations in every core category, with his chair confirming that he was on track for tenure and promotion consideration in Fall 2025. *Id.* ¶¶ 22–25. Before Defendant's statement, Plaintiff was unaware of any complaint, finding, investigation, or record indicating that he had harassed women faculty members by email. *Id.* ¶ 26.

**B. The listserv post.**

The Legal Writing Institute operates a private, closed listserv for credentialed legal writing and legal education professionals, whose membership guidance instructed members not to redistribute listserv communications outside the forum without the author's consent. *Id.* ¶¶ 27–28. At 1:30 a.m. on May 29, 2025, Plaintiff posted a message titled "Advice -- Difficult Students," describing a difficult year with undergraduate students and asking colleagues how they handled similar trends. *Id.* ¶¶ 30–31. The post named no student, faculty member, staff member, or administrator, and made no reference, express or implied, to women faculty, gender, harassment, or misconduct toward any person. *Id.* ¶ 32.

**C. The disclosure and the accusation.**

Defendant, a professional law librarian at an unrelated institution, received the post through her listserv membership. *Id.* ¶¶ 18, 29. She had never supervised, employed, or evaluated Plaintiff; had no institutional relationship with Georgia College or authority over his employment; and had never witnessed his interactions with any Georgia College faculty member. *Id.* ¶¶ 19–20. At approximately 8:21 a.m., without Plaintiff's knowledge or consent and contrary to the listserv guidance, she forwarded the post to Cox through Facebook Messenger: "Since he mentioned the college, I'm sharing with you - maybe others already have. Hope you

are doing well." *Id.* ¶¶ 29, 33. Georgia College had not requested information from her before she initiated the exchange. *Id.* ¶ 64.

At approximately 5:52 p.m., Cox replied: "Thank you so much for sharing this. Can you tell he is desperate? Many problems with this guy. Can you tell me where this was posted?" *Id.* ¶ 34. Defendant answered, "True nut case," and identified the listserv. *Id.* ¶ 35. Cox then described a supposed "pattern" of Plaintiff attacking students—a characterization the FAC alleges was false. *Id.* ¶ 36. Minutes after calling Plaintiff a "True nut case," and in the same exchange, Defendant wrote: "I believe he was harrassing [*sic*] women faculty with emails last yr but I forget the details." *Id.* ¶¶ 35, 37.

The exchange identifies no email, recipient, date, complaint, witness, investigation, record review, or institutional finding supporting the accusation. *Id.* ¶ 41. On information and belief, Defendant had not reviewed Plaintiff's personnel or disciplinary records and had not spoken with Plaintiff or with any woman faculty member he supposedly harassed. *Id.* ¶¶ 20, 41. Plaintiff did not harass women faculty members by email during the prior year or at any other time. *Id.* ¶¶ 3, 40. No record made available to him identifies a substantiated complaint, finding, disciplinary determination, or investigative conclusion that he did. *Id.* ¶¶ 40, 43.

**D. The institutional consequences.**

Cox did not dismiss the accusation. She wrote, "That would not surprise me. If you come across anything else, I'd appreciate your sharing it." *Id.* ¶ 44. At approximately 9:03 the next morning she wrote: "Billie Jo - I've forwarded this info to our HR office for their ongoing investigation into this faculty member & they asked me for any more specifics I can provide. Is there a screenshot of his message from the list-serve you can send, or at least a date it was posted?" *Id.* ¶ 45. Defendant replied, "I think I can do that," and at approximately 10:06 a.m. sent a complete screenshot of Plaintiff's post with full header metadata. *Id.* ¶¶ 47–48. Nothing in

the exchange reflects that she retracted, corrected, qualified, or attempted to verify the harassment accusation. *Id.* ¶¶ 49, 60.

An investigation of Plaintiff predated the statement; he was never told of it. *Id.* ¶ 53. The FAC alleges that Defendant's accusation introduced into that process a distinct allegation—email harassment of women faculty during the prior year—different in kind from a listserv discussion of classroom conduct. *Id.* ¶ 52. The precise material Cox forwarded is not yet known; the FAC pleads facts supporting the reasonable inference that it included the accusation or its substance. *Id.* ¶¶ 46, 50, 52. Georgia College later issued Plaintiff a terminal contract. *Id.* ¶ 50. Plaintiff learned of the statement only in January 2026, when Georgia College produced the Messenger exchange in response to his Open Records Act requests. *Id.* ¶ 67.

## LEGAL STANDARD

A complaint survives Rule 12(b)(6) if it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "is not akin to a 'probability requirement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). The Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam).

Under District of Columbia law, a defamation plaintiff must allege "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special

harm." *Wright*, 68 F.4th at 624 (quoting *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001)); *accord Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005).[1]

Three settled principles govern this Motion. First, the threshold question is capability, not certainty: "[i]t is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule, as a matter of law, that it was not libelous." *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000) (quoting *Levy v. Am. Mut. Liab. Ins. Co.*, 196 A.2d 475, 476 (D.C. 1964)); *see Castillo Butters*, 176 F.4th at 49–50.

Second, review is confined to the complaint, documents incorporated in or integral to it, and matters properly subject to judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004). Judicial notice reaches facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). A court may notice that a pleading was filed or an order entered, but not treat the allegations of another pleading, or a court's recitation of them, as established fact. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

Third, privilege is an affirmative defense. A plaintiff need not plead around it, and dismissal on that ground is proper only when the defense is established on the face of the complaint. *See Jones v. Bock*, 549 U.S. 199, 212–15 (2007); *cf. Firestone v. Firestone*, 76 F.3d 1205, 1208–09 (D.C. Cir. 1996) (limitations defense). A qualified privilege is defeated by

[1] Both parties apply District of Columbia law. The FAC pleads that its allegations state a claim under District of Columbia law and, alternatively, under the law of Georgia, New Jersey, or Maryland, should the Court's choice-of-law analysis require it. FAC ¶ 15. The Motion applies District law throughout and identifies no outcome-determinative conflict. Because choice-of-law issues are waivable and not jurisdictional, the Court may adopt the parties' shared view. *See Goodrich v. Bank of Am., N.A.*, 136 F.4th 347, 354 n.2 (D.C. Cir. 2025).

malice, which in this context is "the equivalent of bad faith," and the D.C. Circuit has held that a complaint may plausibly plead it at the Rule 12(b)(6) stage. *Wright*, 68 F.4th at 624–25 (quoting *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 858 (D.C. Cir. 2006)).[2]

## ARGUMENT

### I. THE CHALLENGED SENTENCE IS A VERIFIABLE ACCUSATION OF FACT, NOT PROTECTED OPINION.

#### A. "I believe" does not convert an accusation into an opinion.

The Motion's central premise is that two words of preface neutralize the accusation that follows them. The Supreme Court rejected that premise in the case the Motion itself cites. *Milkovich* held that "[s]imply couching such statements in terms of opinion does not dispel these implications," and endorsed Judge Friendly's warning that liability cannot be avoided "simply by using, explicitly or implicitly, the words 'I think.'" 497 U.S. at 19 (quoting *Cianci*, 639 F.2d at 64). The question is not whether the speaker signaled uncertainty, but whether the statement's factual connotation is "sufficiently factual to be susceptible of being proved true or false." *Id.* at 21. In the District, opinions are actionable if they "imply a provably false fact, or rely upon stated facts that are provably false." *Guilford*, 760 A.2d at 597 (quoting *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 313 (D.C. Cir. 1994)).

*Milkovich* also supplies the framework that answers the Motion. A statement of the form "I think Jones lied" is provable as false on two levels: "First, that the speaker really did not think Jones had lied but said it anyway, and second that Jones really had not lied. It is, of course, the

---

[2] The Motion invokes only Rule 12(b)(6). Having filed a Rule 12 motion that omits any defense under Rule 12(b)(2) or 12(b)(3), Defendant may not raise those defenses by a later motion. Fed. R. Civ. P. 12(g)(2), 12(h)(1)(A). Nor is the District's Anti-SLAPP Act available; its special motion to dismiss does not apply in federal court. *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333–37 (D.C. Cir. 2015).

second level of falsity which would ordinarily serve as the basis for a defamation action . . . ." 497 U.S. at 20 n.7. The D.C. Circuit applied that footnote this May to reverse a Rule 12(b)(6) dismissal, holding that the district court erred by examining only the first level. *Castillo Butters*, 176 F.4th at 48. The Motion repeats that error. It asks whether Defendant believed something; the defamation lies in what she said she believed.

The Motion's cases do not establish otherwise. In *Bauman v. Butowsky*, the statements conveyed suspicion about a public controversy—that the plaintiff's involvement was "suspicious," that "it seemed" his job was to discredit people—without charging any discrete act capable of proof. 377 F. Supp. 3d 1, 10–13 (D.D.C. 2019). In *Passantino v. Weissmann*, by contrast, the court rejected the opinion defense because the post "very directly claimed that Mr. Passantino had committed a specific act—encouraging or preparing a specific witness to make false statements." 752 F. Supp. 3d 168, 178 (D.D.C. 2024); *see Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 133 (D.D.C. 2009). Calling a lawyer's work good or bad is "a subjective spectrum indicative of an opinion"; saying he lied is "a yes-or-no binary indicative of a fact." *Passantino*, 752 F. Supp. 3d at 178–79. And the passage on cautionary language the Motion quotes, Mem. 7, is followed by the warning that "the effect of cautionary language should not be overstated." *Id.* at 180. (The court later ruled for the defendant on negligence, which Part V addresses.)

The challenged sentence falls on the factual side of that line. It identifies an actor, a class of recipients, a medium, and a period. In the private, employer-facing context alleged here, a reasonable recipient could understand it as reporting an actual episode of misconduct. The Motion calls the sentence "conjecture or surmise," Mem. 6, but conjecture reasons from disclosed premises, and this sentence discloses none. FAC ¶¶ 37, 40–42. That "harassing" carries

an evaluative edge does not change the analysis: the word is anchored to conduct—emails, sent to women faculty, during the prior year—whose existence and character can be tested.

The Motion's fallback is the maxim that "[w]here the question of truth or falsity is a close one, a court should err on the side of nonactionability." *Moldea*, 22 F.3d at 317 (citation omitted); *see* Mem. 7. *Moldea* applied that caution to a book review, a genre whose readers expect evaluation. The FAC alleges a private report of past workplace misconduct, made without disclosed predicate facts. A specific charge of past conduct is not made close by the hedge its author placed in front of it.

**B. "I forget the details" implies that details existed.**

The Motion treats the second clause as a disclaimer. It is the opposite. "I forget the details" does not say there were no details. Read naturally, it implies that there were—that Defendant was describing a real episode whose particulars she once knew and could no longer recall. FAC ¶¶ 56, 61–62. The clause does not withdraw the accusation; it vouches for the accusation's existence and withholds its proof. Whether she actually possessed reliable information bears on fault and privilege, not on whether her words are reasonably capable of asserting verifiable misconduct. *See Milkovich*, 497 U.S. at 19–21 & n.7; *Wright*, 68 F.4th at 626. At a minimum, the factual reading is a reasonable one, and a reasonable reading favorable to Plaintiff cannot be rejected on a motion to dismiss.

The Motion reads the sentence the same way when it is not arguing opinion. It introduces the words with "Ms. Kaufman then recalled," Mem. 3, calls them "a vaguely recalled allegation" and a "vague recollection," Mem. 8, and says that Defendant "shared what information she had" in "a conscientious attempt to ensure that important information was conveyed to President Cox." Mem. 14. A recollection is a memory of an event, and information is a report of fact. Neither is an opinion. Nor would the sentence become nonactionable if Defendant were passing

along something she had heard. One who repeats a defamatory charge is subject to liability as if he had originated it, even if he disclaims belief in its truth. *See* Restatement (Second) of Torts § 578 & cmt. e (Am. L. Inst. 1977). A speaker who professes belief in the charge stands in no better position.

The Motion's own authorities draw the same line. Its test asks whether the speaker offers "conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." Mem. 6 (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)). A speaker who says she has forgotten "the details" of an episode claims to have possessed them. And an opinion is actionable when it has "an explicit or implicit factual foundation and is therefore objectively verifiable." Mem. 6 (quoting *Washington v. Smith*, 80 F.3d 555, 556 (D.C. Cir. 1996)). This sentence's implicit foundation—emails, sent to women faculty, during the prior year—is precisely that.

What the clause cannot do is remove the accusation from the realm of proof. Whether Plaintiff sent emails harassing women faculty during a defined period is testable against emails, recipients, complaints, witnesses, and institutional records. FAC ¶ 42. The D.C. Circuit has held as much of a vaguer charge: a statement that the plaintiff had fostered a "negative climate" was actionable because it "could easily imply that [the speaker] had personal knowledge of specific actions or behaviors" that "could in turn be verified or shown through indicia such as complaints, high turnover, or testimony from colleagues." *Wright*, 68 F.4th at 626. An accusation of harassing women faculty by email implies more and is more readily verified. Defendant's memory disclaimer may bear on whether she held the belief she professed; it does not answer whether the accusation is true, which is the level of falsity that ordinarily governs. *Milkovich*, 497 U.S. at 20 n.7.

**C. Context confirms the factual meaning.**

The Motion's remaining answer is that the exchange was "collegial." Mem. 2. Context matters, and it supports Plaintiff's reading under each of the four considerations *Ollman* identifies. *Ollman v. Evans*, 750 F.2d 970, 979–84 (D.C. Cir. 1984) (en banc).

*Common usage.* Saying that a man "was harrassing [*sic*] women faculty with emails" charges him with conduct; it does not merely express an evaluation. The Motion's observation that "harass" can mean "to annoy persistently," Mem. 9, confirms verifiability: whether Plaintiff persistently annoyed women faculty by email is as testable as whether he harassed them. And once a statement is capable of defamatory meaning, whether it was in fact defamatory is a question for the jury. *See Guilford*, 760 A.2d at 594–95.

*Verifiability.* The sentence identifies who allegedly engaged in the conduct (Plaintiff), whom he allegedly harassed (women faculty), how (emails), and when ("last yr"). A vague recollection of a specific charge remains a specific charge. That distinguishes *Guilford*, where a columnist wrote that a railroad had "bolted" from wage negotiations; the word could not support liability, and the column's theme—the railroad's supposed hostility to labor—was not provably false. 760 A.2d at 598–99. *Guilford* itself drew the controlling distinction: "A narrower and more specific charge, focused on allegedly unlawful conduct, is more readily susceptible of a defamatory meaning than is the mere attribution of a hostile state of mind." *Id.* at 600.

*Immediate context.* Defendant did not write a column, join a public debate, or trade insults with an equal. She wrote privately to the president of Plaintiff's employer, in a thread she had opened that morning by forwarding his post, minutes after calling him a "True nut case" and while the president was discussing his "problems." FAC ¶¶ 33–37. That is a setting of factual reporting: one person supplying another with information she expects the recipient to consider and act upon.

*Broader context.* The conversation concerned a public university employee and his continued employment. Statements to an employer about an employee's workplace conduct are ordinarily understood as reports of conduct, not rhetorical hyperbole. *See Wright*, 68 F.4th at 626 (holding actionable statements by the chief executive of the plaintiff's former employer to the leader of another organization).

The only reader's pleaded response confirms that reading. Cox did not treat the statement as banter. She said it "would not surprise" her, asked for more, and the next morning reported that she had forwarded "this info" to human resources "for their ongoing investigation into this faculty member." FAC ¶¶ 44–45. The Motion suggests that Cox would have discounted the remark in light of Plaintiff's writings. Mem. 10–11. The FAC does not allege that Cox had read them, nothing properly before the Court establishes it, and her pleaded response supports the opposite inference. The question is whether the sentence is reasonably capable of the meaning Plaintiff ascribes to it. *Guilford*, 760 A.2d at 594; *Castillo Butters*, 176 F.4th at 49–50. The recipient's own words answer it.

## II. THE ACCUSATION IS CAPABLE OF DEFAMATORY MEANING AND IS DEFAMATORY PER SE.

### A. The standard is capability, and this charge meets it.

A publication is defamatory if it "tends to injure [the] plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Guilford*, 760 A.2d at 594 (quoting *Howard Univ. v. Best*, 484 A.2d 958, 988-989 (D.C. 1984)); *see White v. Fraternal Ord. of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990). The language must make the plaintiff appear "odious, infamous or ridiculous." *Guilford*, 760 A.2d at 594 (quoting *Best*, 484 A.2d at 989). Dismissal is proper only if the statement "is not reasonably capable of any defamatory meaning

and cannot be reasonably understood in any defamatory sense." *Id.* (quoting *Levy*, 196 A.2d at 476).

An accusation that a professor harassed women colleagues by email is readily capable of that meaning. It does not call him difficult, opinionated, or unpleasant. It charges conduct that, in an academic workplace, can trigger reporting obligations, human resources intervention, and disciplinary review—and the FAC pleads facts supporting the reasonable inference that it reached human resources for an ongoing investigation within a day. FAC ¶¶ 1, 45–46, 52.

### B. The D.C. Circuit rejected analogous range-of-meanings reasoning in May 2026.

Defendant's principal argument on defamatory meaning is that "harass" has "a range of meanings, some of which are scarcely more than critical." Mem. 9. *Castillo Butters* rejected analogous reasoning. There, the defendants announced that the plaintiff had violated a code provision that "not only requires members to treat others with respect and collegiality but also broadly prohibits all forms of discrimination, harassment, and bullying." 176 F.4th at 46. The district court reasoned that the statement "could have meant anything from harassment to bullying to discrimination to treating others with disrespect." *Id.* at 49 (cleaned up). The court of appeals disagreed: the statement was capable of defamatory meaning "because [the provision] proscribes odious conduct, to wit, sexual harassment," and its coverage of "some less serious conduct—such as 'treating others with disrespect'—does not defeat the commonsense conclusion that the statement could be 'reasonably understood in [a] defamatory sense.'" *Id.* at 49–50 (citations omitted).

That reasoning applies here with greater force. In *Castillo Butters*, the reader had to supply the worst meaning of a provision that included harassment. Defendant used the word "harassing" herself, attached it to a defined class of targets—"women faculty"—and delivered it

to the accused's employer. The D.C. Court of Appeals has likewise held, under the more demanding standard of the District's Anti-SLAPP Act, that a statement attributing an official's departure to abusive behavior toward "predominantly female staff," made amid an investigation of another executive's sexual misconduct, could lead a reasonable jury to conclude that his misconduct was sexual in nature. *Fells v. Serv. Emps. Int'l Union*, 281 A.3d 572, 586–87 (D.C. 2022). That a listener could have chosen the blandest sense of "harassing" does not entitle Defendant to that choice on the pleadings.

### C. The accusation falls within the professional-fitness category of defamation per se.

Only "statements about extreme subjects" are defamatory per se, and "[t]hat category includes 'statements imputing to a person a criminal offense; a loathsome disease; matter affecting adversely a person's fitness for trade, business, or profession; or serious sexual misconduct.'" *KLEO AG v. Rivada Networks, Inc.*, 148 F.4th 741, 746 (D.C. Cir. 2025) (quoting *Carey v. Piphus*, 435 U.S. 247, 262 n.18 (1978)). The Motion agrees that professional-misconduct allegations qualify when they charge "illegal or unethical behavior." Mem. 9 (quoting *KLEO*, 148 F.4th at 746). A reasonable recipient could understand an accusation that a professor harassed women colleagues as imputing exactly that—misconduct incompatible with the collegiality, trust, and lawful conduct faculty employment requires, and of a kind that can end academic careers. FAC ¶¶ 16–17, 70(a), (c), (e), 75. The statement falls within the professional-fitness category, and the Court need not decide whether it falls within any other.

The Motion's answer is that "sending harassing emails is not disqualifying for a lawyer or a teacher in the way the taking performance-enhancing drugs is for an athlete." Mem. 10. Defendant offers no authority for that proposition, and the category does not require that the imputed conduct be disqualifying; it reaches matter "affecting adversely" professional fitness.

*KLEO*, 148 F.4th at 746. A charge that a professor harassed women colleagues does—as its pleaded routing into a human resources investigation of "this faculty member" illustrates. FAC ¶¶ 45–46, 52. Nor does the Motion's reliance on "statements about extreme subjects," Mem. 8 (quoting *Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018) (per curiam)), help Defendant. This is not criticism of teaching style or personality. It is an accusation of repeated workplace misconduct directed at women colleagues.

The Motion's comparators do not establish otherwise. *KLEO* concerned statements about a corporation's spectrum rights and supposed plans to move operations to China. The terms the Motion collects—"disgusting," "disgraceful," "shady," and "sleazy," Mem. 9–10—are subjective characterizations, not accusations of specific conduct. And the per se categories are categories, not a closed list of fact patterns.

The Motion's own description of the message confirms the point. Defendant's privilege argument depends on the statement's significance—a "disclosure of information material to a teacher's employment," Mem. 2, concerning "possible misconduct," Mem. 13. Her per se argument depends on the opposite—a passing remark "hardly noteworthy." Mem. 11. She may argue in the alternative, but she cannot change the character of the statement by doing so. And even if the Court declined per se treatment, the statement would remain factual and defamatory, and Count II would proceed on the special damages it pleads. *See* Part VI, *infra*.

**D. Falsity is pleaded, and the Motion offers no basis to doubt it.**

The FAC alleges, under penalty of perjury, that Plaintiff did not harass women faculty members by email during the prior year or at any other time, and that no supporting complaint, finding, investigation, or record exists in anything made available to him. FAC ¶¶ 3, 26, 40–41, 43. A plaintiff who denies the conduct charged has "effectively as well as expressly alleged" falsity. *Castillo Butters*, 176 F.4th at 48. The Motion identifies no emails and no faculty

members; it argues instead that the statement is not verifiable. Mem. 6–8. A defendant may contest falsity later; she may not bypass the element and ask the Court to treat a false accusation as a harmless one.

Nor can the listserv post supply the missing truth. It addressed student classroom behavior, named no one, and said nothing about women, gender, harassment, or faculty. FAC ¶¶ 30–32. Describing Plaintiff as having "maligned" his students, Mem. 1–2, substitutes an unrelated communication for proof of the statement actually challenged.

## III. THE MOTION'S CHARACTER MATERIALS CANNOT BE CONSIDERED FOR THEIR TRUTH AND WOULD NOT HELP DEFENDANT IF THEY COULD.

### A. The memoir, the blog post, and the article cannot be considered for their truth.

Plaintiff does not object to the Court's consideration of Exhibit B, to the extent it accurately reproduces the Messenger exchange that Georgia College produced. That exchange is the publication on which the FAC rests, and it is integral to the claim. *Kaempe*, 367 F.3d at 965. The remaining materials stand differently.

None of them appears in the FAC: not Exhibit D, a 2013 blog post; not the 2012 memoir; not the 2016 law review article. Plaintiff does not rely on them, and they are not integral to a claim about a 2025 message. Plaintiff objects to their use to establish the truth of the accusation, to assume that Cox knew their contents, or to override the FAC's allegations. That a writing exists, or what it says, may be noticed. But the propositions for which these materials are offered—that Plaintiff is "a teacher known for making extreme statements," Mem. 10, and that Cox read the remark against that background—are not indisputable facts that Rule 201(b) permits a court to notice. Fed. R. Evid. 201(b).

The same limits apply to the Motion's other additions: a university website offered to establish when Cox took office, Mem. 10 n.2; an associate-dean title and a "former colleague"

relationship that the FAC does not allege, Mem. 2–3; *see* Part IV.A, *infra*; and the assertion that the listserv "includes thousands of educators and attorneys," Mem. 3, supported by FAC ¶ 29—which contains no such figure—and by Plaintiff's Georgia pleading, Ex. A ¶ 38, whose allegations cannot be taken as established here.

Nor may Exhibit B be read the way the Motion reads it. The Motion asserts that "[a]ll Cox said in response" to the accusation was "That would not surprise me." Mem. 3. Cox said more: "If you come across anything else, I'd appreciate your sharing it." FAC ¶ 44. The Motion says Cox sent Plaintiff's post to human resources. Mem. 3. Cox wrote that she forwarded "this info." FAC ¶ 45. And the Motion calls the exchange collegial while omitting that Defendant called Plaintiff a "True nut case." *Id.* ¶ 35. Having offered the exchange as context, the Motion must take all of it, with reasonable inferences drawn in Plaintiff's favor. *See Hettinga*, 677 F.3d at 476.

The Motion's use of the Georgia litigation fails for the same reason. The Court may notice what Plaintiff alleged and what the court decided in the Middle District of Georgia. It may not treat that complaint's allegations, or the order's recitation of them, as adjudicated facts about what caused Plaintiff's losses. *Glob. Network*, 458 F.3d at 157. The Motion's own authority claims no more than that a court's "ability to take notice of adjudicative facts extends to judicial notice of court records in related proceedings." Mem. 1 n.1 (quoting *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 171 (D.D.C. 2010)). Yet the Motion uses Exhibits A and C for their truth, Mem. 1, 4, 17, disregarding the FAC's allegations as unproven while treating Plaintiff's Georgia allegations as established. Allegations do not change character when they become useful to the movant.

Plaintiff therefore requests that the Court exclude these materials to the extent offered for their truth. If the Court elects to consider outside evidence requiring conversion, Plaintiff requests a reasonable opportunity to present pertinent material and, upon an appropriate showing, targeted discovery. Fed. R. Civ. P. 12(d); Fed. R. Civ. P. 56(d). No discovery has been taken into the investigative file, the decisionmakers' communications, or what Cox forwarded, all held by a nonparty. FAC ¶¶ 46, 50–51.

**B. The materials answer nothing.**

Even if considered, the character materials establish no element of any defense. None identifies a harassing email. None identifies a woman faculty member whom Plaintiff supposedly harassed. None is alleged to have been read by Defendant, relied upon by her, seen by Cox before the accusation arrived, or considered by human resources. A memoir about illness and recovery, a blogger's derision of that memoir, and a law review article criticizing campus speech regulation are not evidence that Plaintiff harassed his colleagues. They are evidence that he has written things some people dislike.

To the extent Defendant suggests that prior criticism eliminated any capacity for further injury, the argument fails. The D.C. Circuit, in an opinion by then-Judge Scalia, rejected the libel-proof plaintiff doctrine, reasoning that courts should not declare a reputation already beyond further damage. *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1568–69 (D.C. Cir. 1984), *vacated on other grounds*, 477 U.S. 242 (1986). The Supreme Court likewise declined to hold the related incremental-harm doctrine compelled by the First Amendment. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 523 (1991). A person criticized for his opinions does not forfeit his reputation as to his conduct. Whatever a reader thinks of Plaintiff's views on legal education, that reader would think worse of him upon being told that he harasses women colleagues. That difference is the injury.

Nor does Cox's reply—"That would not surprise me"—show that the accusation did no harm. FAC ¶ 44. A reader already disposed to think ill of the subject is the reader most likely to credit a false charge and to act on it. This one did. *Id.* ¶¶ 44–45.

## IV. NO PRIVILEGE CAN BE RESOLVED IN DEFENDANT'S FAVOR ON THE PLEADINGS.

### A. The predicates of the common-interest privilege are not established on the face of the FAC.

The common-interest privilege protects a statement "(1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, (3) to a person who has such a corresponding interest." *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990). Defendant bears the burden of establishing those elements—the Motion acknowledges that the burden shifts to Plaintiff only upon "[s]uch a finding," Mem. 12—and on this Motion she must do so from the face of the FAC and the matters properly before the Court. *See Jones*, 549 U.S. at 215.

*Payne v. Clark* does not hold otherwise. It extended the privilege to "citizens and other third parties who communicate in good faith with District agencies" about alleged employee misconduct "during an investigation." 25 A.3d 918, 926–27 (D.C. 2011). The speaker there gave his account at the investigating agency's request and recounted his own encounter with the employee. *Id.* Nothing in *Payne* holds that an outsider's unsolicited accusation, delivered through a personal channel to an official who had requested nothing, is privileged as a matter of law. That is what the FAC pleads. Defendant held no position at Georgia College; had no supervisory, investigative, reporting, or contractual responsibility concerning Plaintiff; had no access to his records; and had no firsthand knowledge of his interactions with any faculty member there. FAC ¶¶ 4, 19–20, 64. No one requested the accusation. *Id.* ¶¶ 34–37, 64. She

acted for no institution or affected faculty member and used no institutional channel, writing in a personal Messenger thread she opened with "Hope you are doing well." *Id.* ¶¶ 33, 64.

The Motion supplies by assertion what the pleading does not contain. It states that Defendant "is the Associate Dean for Law Library & IT Services," citing FAC ¶ 9. Mem. 2. Paragraphs 9 and 18 allege only that she "is employed as a professional law librarian at the University of the District of Columbia David A. Clarke School of Law." The Motion then builds its argument on that title: a communication from "one academic administrator to another." Mem. 13. Even if noticed, a title would establish neither a duty owed to Cox nor good faith in this communication.

The privilege is communication-specific. Cox's interest in information about her own employee does not establish a corresponding interest or duty in every outsider who elects to send her an accusation, and an interested recipient does not confer good faith on every accusation sent to her. *See Moss*, 580 A.2d at 1024; Restatement (Second) of Torts § 596 (Am. L. Inst. 1977). The pleaded circumstances—no institutional responsibility, no firsthand knowledge, an unsolicited accusation, no identified source, a contemporaneous epithet, and Defendant's subsequent conduct—prevent the FAC from conclusively establishing a good-faith privileged communication. FAC ¶¶ 41, 56–60, 64–65.

The Motion's reliance on *Washburn v. Lavoie*, Mem. 12, is misplaced. *Washburn*, which affirmed summary judgment on a developed record, applied the distinct privilege of self-defense, which arises when information affects "a sufficiently important interest of the publisher" and the recipient's knowledge "will be of service in the lawful protection of the interest." 437 F.3d 84, 90 (D.C. Cir. 2006) (quoting Restatement (Second) of Torts § 594 (Am. L. Inst. 1977)). The Motion's quotation substitutes "recipient" for "publisher," Mem. 12, and Defendant identifies no

interest of her own that her message protected. Nor does *Mastro* help. The Motion cites it for the proposition that the privilege "is not necessarily confined to reports within a single institution." Mem. 12–13 (citing 447 F.3d at 849 n.3). But the speaker in *Mastro*, another summary-judgment decision, was the plaintiff's own employer, responding to a government agency's request. *See* 447 F.3d at 849 & n.3. That a privilege may follow an employer's report outside the company does not establish that it attaches to a stranger's unsolicited report into one.

*Payne* also confirms the limits of a pleading-stage ruling. The Motion cites it for burden-shifting once the privilege attaches. Mem. 12. But *Payne* reiterated that "[w]hether a person acts with malice is ordinarily a question of fact for the jury," 25 A.3d at 926 (citation omitted), and vacated summary judgment for a speaker who, unlike Defendant, had spoken at the investigating agency's request.

Nor can the argument be rescued by relabeling it. The Motion's formulation—that the privilege applies to "information that affects a sufficiently important interest of the recipient," Mem. 12—tracks the distinct privilege for protection of the recipient's interest. Restatement (Second) of Torts § 595 (Am. L. Inst. 1977). That privilege requires a correct or reasonable belief that the information affects such an interest, and a legal duty to speak or speech within generally accepted standards of decent conduct; an important factor is whether the publication responded to a request. *Id.* § 595(1), (2)(a). Each point cuts against Defendant. Cox had asked only whether Plaintiff seemed "desperate" and where the post appeared; Defendant answered both questions and then volunteered an accusation no one had requested. FAC ¶¶ 34–37, 64. She had no responsibility concerning Plaintiff, *id.* ¶¶ 19, 64, and she disclosed, in the same sentence, that she could not recall the details on which a reasonable belief would rest, *id.* ¶¶ 37, 41, 56.

**B. The Motion's reporting-rule analogies refute the duty it asserts.**

To supply a duty, the Motion invokes ABA Standard 404(b) and D.C. Rule of Professional Conduct 8.3(a). Mem. 14. Neither imposed any duty on Defendant toward Cox, and each illustrates what a genuine reporting duty looks like: one owed by an identified person, triggered by a defined circumstance, and discharged through a designated channel.

As the Motion describes it, Standard 404(b) directs a law school to evaluate periodically how its own faculty discharges its responsibilities. Mem. 14 (citing ABA Standards & Rules of Procedure for Approval of Law Schools, Standard 404(b) (2026–2027)). Defendant works at the University of the District of Columbia David A. Clarke School of Law. FAC ¶¶ 9, 18. Plaintiff taught undergraduate law courses at Georgia College, *id.* ¶¶ 16, 31, whose faculty the Standard does not govern, and the Standard says nothing about reports by a member of one institution to the president of another.

Rule 8.3(a) requires a lawyer who knows that another lawyer has committed a violation raising a substantial question as to that lawyer's honesty, trustworthiness, or fitness to inform "the appropriate professional authority." D.C. Rules of Pro. Conduct r. 8.3(a); *see* Mem. 14. A university president is not a lawyer-disciplinary authority, and nothing establishes the knowledge that triggers the Rule or any duty running to Cox. These analogies show only that accusations of this kind are serious and are to be made on a factual basis through proper channels. They supply no duty and establish no good faith.

**C. In all events, the FAC plausibly pleads that any privilege was abused.**

Even if a common interest were assumed, the FAC plausibly pleads that the privilege would not protect this statement. A qualified privilege "exists only if the publisher believes, with reasonable grounds, that [the] statement is true." *Wright*, 68 F.4th at 624–25 (quoting *Altimont*, 374 A.2d at 290). It is lost on a showing of malice, which in this context is "the equivalent of bad

faith": the doing of an act "without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will." *Mastro*, 447 F.3d at 858–59 (quoting *Moss*, 580 A.2d at 1025). The inquiry looks to the publisher's primary motive. *See Mosrie v. Trussell*, 467 A.2d 475, 477–78 (D.C. 1983); *Columbia First Bank v. Ferguson*, 665 A.2d 650, 656 (D.C. 1995).

The Motion invokes *Moss* for the proposition that a "failure to undertake a reasonable inquiry prior to publication" is not malice. Mem. 12 (quoting 580 A.2d at 1024–25). Plaintiff does not rest on a failure to inquire. He relies on the combined allegations: the admitted lack of recalled details; the absence of any identified source; the unsolicited, employer-directed accusation; the contemporaneous hostile epithet; and the failure to qualify the accusation after learning that her communications had been forwarded to human resources. FAC ¶¶ 35, 37, 41, 45–49, 56–60, 64–65. *Moss* itself—reviewing a jury verdict—recognizes that a failure to investigate "may be part of or accompanied by conduct" supporting a finding of reckless disregard. 580 A.2d at 1026. And in *Wright*, the court assumed a common interest and nonetheless held the privilege inapplicable at the pleading stage because the complaint plausibly alleged malice, including that the speaker lacked reasonable grounds to believe her statements were true. 68 F.4th at 625.

The Motion also calls the applicability of a privilege "a pure question of law." Mem. 11 (citing *Carter v. Hahn*, 821 A.2d 890, 894 (D.C. 2003)). Whether the occasion is privileged may be a question of law; whether the privilege "was abused by the defendant, is a question of fact for the jury." *Mosrie*, 467 A.2d at 477; *see Payne*, 25 A.3d at 926. And the contention that the FAC "pleads no facts suggesting abuse," Mem. 12, cannot be squared with the allegations just recited.

The case for reasonable grounds is weaker here than in *Wright*. The speaker there was the chief executive of the organization that had employed and fired the plaintiff, and was at least positioned to know the plaintiff's work. Defendant, as pleaded, was not. She identified no email, recipient, date, complaint, witness, record, or finding; she had reviewed no record and spoken with no supposed victim; and she said, in the same sentence as the accusation, that she could not recall its details. FAC ¶¶ 20, 41, 56. Contrast *Columbia First Bank*, where, after trial, a bank security officer's report was held not malicious because it was "based on a thorough investigation by several bank officials" and recounted facts "clearly sufficient to give rise to a suspicion of criminal activity." 665 A.2d at 656–57. Defendant's report rested on no identified investigation and recounted no facts. Her own words supply much of the basis for inferring that she lacked reasonable grounds.

*Wright* also found "reasons to doubt" that the statements there furthered any common interest, because the speaker raised the subject "unprompted" and used language that "could fairly be characterized as ad hominem and unprofessional," such as calling the plaintiff "toxic." 68 F.4th at 625–26. The parallel is close. Defendant raised Plaintiff unprompted, FAC ¶¶ 33, 64, and minutes before the accusation called him a "True nut case"—contemporaneous written evidence of hostility rather than neutral professional concern. *Id.* ¶¶ 35, 59. She obtained her opening by disregarding a closed forum's guidance, *id.* ¶¶ 28–29, 58; chose as her recipient the chief executive of Plaintiff's employer, *id.* ¶¶ 33, 65, 73; and volunteered the charge into a conversation in which that official had already expressed hostility and an appetite for damaging information, *id.* ¶¶ 34, 36. The Motion calls these "baseless and conclusory insinuations." Mem. 13. Each is a pleaded circumstance, several are documented in the exchange itself, and together they support a reasonable inference of bad faith. State of mind may be proved "through the

cumulation of circumstantial evidence, as well as through direct evidence." *Tavoulareas v. Piro*, 817 F.2d 762, 789 (D.C. Cir. 1987) (en banc).

Defendant may answer that "True nut case" merely responded to Cox's question whether Plaintiff seemed "desperate." FAC ¶¶ 34–35. That reading supports the inference rather than answering it: Defendant joined the president's hostile appraisal of her employee and, minutes later, supplied a new and more serious charge against him. Nor does it matter that the parties had "never even met." Mem. 13. Hostility toward a stranger is still hostility, and here it is documented in Defendant's own words.

Most significant is what she did afterward. By the morning of May 30, Defendant knew that Cox had forwarded "this info" to human resources for use in an ongoing investigation of Plaintiff. FAC ¶¶ 45–46. That was the moment for a speaker acting in good faith to say that she could not vouch for the accusation, that she had no details, that it should not be relied upon. Instead, she supplied the requested screenshot and let the accusation stand. *Id.* ¶¶ 47–49, 60. That documented choice, made with knowledge of the institutional use to which her information was being put, supports—together with the other pleaded circumstances—the inference that she published with "conscious indifference or reckless disregard" of the accusation's effect on Plaintiff. *Mastro*, 447 F.3d at 858–59; *see Wright*, 68 F.4th at 625.

Whether Defendant's primary purpose was to protect an interest she shared with Cox, or to damage a man she had just called a "True nut case," is a question *Payne* commits to the factfinder, 25 A.3d at 926, and one *Wright* confirms cannot be resolved against a plaintiff who plausibly alleges bad faith and the absence of reasonable grounds, 68 F.4th at 625–26.

### D. Fair comment does not protect an undisclosed accusation of fact.

The fair-comment privilege confers "legal immunity for the honest expression of opinion on matters of legitimate public interest when based upon a true or privileged statement of fact."

*Milkovich*, 497 U.S. at 13. As an affirmative defense, it must be established on the face of the FAC. The FAC plausibly alleges an undisclosed factual accusation, not an honest opinion drawn from true or privileged facts. FAC ¶¶ 38, 41–42, 61–62. That the exchange concerned a public university does not convert every statement within it into fair comment.

*Chishti v. Spottiswoode* does not change the analysis. The D.C. Circuit there resolved the fair-comment question on First Amendment grounds and found "no occasion to consider whether the District of Columbia privilege of fair comment became 'obsolete' in light of broader First Amendment protections." 181 F.4th 92, 103–04 (D.C. Cir. 2026) (citation omitted). The statements it held nonactionable were opinions "based on her first-hand experience, about true facts" already known to readers, *id.* at 104–05, or commentary implying no undisclosed defamatory facts, *id.* at 106–07. Although fair comment may be invoked even when the underlying facts are not stated, *id.* at 103–04, Defendant's sentence implies a specific underlying event—harassing emails to women faculty during the prior year—that the FAC alleges never occurred. FAC ¶¶ 3, 40, 61–62. Defendant disclosed no factual basis for it, and the FAC alleges that she never witnessed Plaintiff's interactions with Georgia College faculty. *Id.* ¶¶ 20, 41.

Nor does Plaintiff's position in the Georgia litigation create a privilege for Defendant. That Plaintiff's own post addressed a matter of public concern does not establish that Defendant's separate accusation about unrelated conduct did so; the two differed in content, speaker, audience, and purpose. Defendant's *a fortiori* argument, Mem. 15, rests on the mistaken premise that once a conversation touches a matter of public concern, every statement within it is privileged.

## V. FAULT IS ADEQUATELY PLEADED.

The FAC alleges that Plaintiff is a private individual and that the statement was a private accusation about a private employment matter. FAC ¶ 54. The Motion does not argue otherwise.

The standard is therefore negligence. District law requires fault amounting "to at least negligence," *Wright*, 68 F.4th at 624 (citation omitted), and the Constitution permits that standard for a private-figure plaintiff, *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974).

The Motion's fault argument is a single sentence: "the tentative language of the Challenged Statement shows that it was not made negligently." Mem. 5. No section develops it, and it inverts the inquiry. Negligence asks whether the speaker failed to exercise ordinary care in ascertaining the truth of the statement before publishing it. *See Kendrick v. Fox Television*, 659 A.2d 814, 822 (D.C. 1995). The Motion's own authority holds that a speaker who does "no more than fail to undertake a reasonable inquiry as to the truth of the assertion prior to publication" has engaged in "conduct amounting to ordinary negligence." *Moss*, 580 A.2d at 1025. Defendant invokes that passage to argue that a failure to inquire is not malice. Mem. 12. She cannot then maintain that the same failure is not negligence. Her admitted inability to recall the details, with the allegations that she identified no source and published a specific employer-directed accusation without verification, permits the inference that she failed to exercise ordinary care. FAC ¶¶ 41, 55–57. She did not ask whether any complaint or finding existed, did not flag the accusation as unverified, and did not correct it after learning that her communications had been forwarded to human resources. *Id.* ¶¶ 57, 60.

The September 2026 decision in *Passantino* illustrates what is missing from Defendant's position. There, after rejecting the opinion defense, the court granted judgment on the pleadings because negligence was inadequately alleged: the sworn deposition testimony on which the statement rested supported rather than contradicted it. *Passantino v. Weissmann*, No. 23-cv-2780 (LLA), slip op. at 9–15 (D.D.C. Sept. 21, 2026), ECF No. 53. A reasonably careful person "may rely on sworn testimony without taking additional steps to verify it," *id.* at 13, and a plaintiff

"must identify some fact that put the defendant on notice that his statement was false or bore a serious risk of falsity," *id.* at 10. Defendant relied on nothing comparable. She is alleged to have had no firsthand knowledge, to have reviewed no records, and to have spoken with no supposed victim, and she identified no witness, email, complaint, finding, or other source. FAC ¶¶ 20, 41. The warning signs are pleaded—her admitted lack of recalled details, her lack of firsthand knowledge, the absence of any identified source, and the contemporaneous hostile exchange—and together support the inference that she published without ordinary care. FAC ¶¶ 20, 35, 37, 41, 55–60, 74.

The FAC also supports the alternative allegation, should a higher standard later be held to apply, that Defendant published while actually entertaining serious doubts about the accusation's truth. *See St. Amant v. Thompson*, 390 U.S. 727, 731–32 (1968). That constitutional inquiry is distinct from the common-law bad-faith inquiry governing abuse of privilege, *see* Part IV.C, *supra*. Her admission that she could not recall the particulars, with the alleged lack of firsthand knowledge or any identified source, the hostile exchange, and her silence after learning that her communications had been forwarded to human resources, supports that inference. FAC ¶¶ 20, 35, 37, 41, 56, 59–60, 74. And under *Milkovich*, first-level falsity—whether Defendant actually held the belief she professed—"may serve to establish malice where that is required for recovery." 497 U.S. at 20 n.7.

**VI. THE FAC PLAUSIBLY PLEADS ACTIONABLE HARM AND CAUSATION.**

The Motion's causation argument cannot defeat Count I. As a per se claim, Count I is complete without proof of special harm; whether the accusation contributed to the terminal contract bears only on recovery of that economic loss. FAC ¶¶ 76, 79–80. And as to that loss, the FAC pleads what *KLEO* found sufficient: a specific economic loss linked to the publication by a sequence of events that is "clear, logical, and factually grounded." 148 F.4th at 748–49.

**A. Count I requires no proof of special damages.**

A defamation plaintiff may satisfy the fourth element by alleging that the statements "were so inherently harmful that they were defamatory per se, in which case no additional showing of damages is required," or by alleging special damages. *KLEO*, 148 F.4th at 745. Because Count I states a per se claim, *see* Part II.C, *supra*, it requires no showing of special damages.

As pleaded, the reputational injury Count I redresses occurred when Cox read the sentence. FAC ¶ 53. Her reply supports the inference that she received it as a credible report about her own employee. *Id.* ¶ 44. The FAC alleges a private-figure plaintiff and a private accusation about a private employment matter, *id.* ¶ 54, and Defendant stresses that the message was one-to-one and "never published to a wider public," Mem. 2. The content, form, and context of the communication mark it as speech on a matter of private concern, for which presumed damages are available without a showing of actual malice. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761–63 (1985) (plurality opinion). Even if the speech were treated as involving a matter of public concern, presumed damages would remain available on a showing of knowledge of falsity or reckless disregard, *Gertz*, 418 U.S. at 349, which the FAC plausibly pleads. *See* Part V, *supra*; FAC ¶¶ 74, 79.

Nor is the privacy of the publication a defense. Publication to a single third party is publication. The argument that Plaintiff "had to seek out" the statement, Mem. 9, would make a falsehood delivered in secret to a decisionmaker actionable only if the victim happens to be told. A whisper to the one person with power over a career is no less injurious for being a whisper.

**B. Count II identifies a specific economic loss.**

Count II matters only if the Court rejects Count I. The FAC pleads it "solely as an alternative measure of damages theory" that "does not seek a duplicative recovery for the same publication." FAC ¶ 79.

Special damages must be pleaded with specificity: the plaintiff must identify "a specific economic loss" and "evidence of causation" linking that loss to the challenged statement. *KLEO*, 148 F.4th at 748 (quoting *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002)); *see* Fed. R. Civ. P. 9(g). Rule 9(g) requires that an item of special damage be "specifically stated"; it does not require proof of causation before discovery. *KLEO* measured the causal allegations by *Twombly*'s plausibility standard, drew every reasonable inference in the plaintiff's favor, and rejected the district court's demand for specific dates because "[t]hat 'degree of detail' is unnecessary at the motion-to-dismiss stage." 148 F.4th at 749–50.

Count II identifies the loss: the salary and employment benefits of Plaintiff's Georgia College faculty appointment, together with the tenure-and-promotion review for which he was favorably positioned. FAC ¶¶ 22–25, 70(c)–(d), 80. That is nothing like the loss found insufficient in *Browning*, where the plaintiff alleged an inability to sell the rights to a manuscript but identified no lost business relationship, did not quantify her loss, and alleged no facts suggesting that the publication caused it. *See* 292 F.3d at 245–46. Count II identifies one employment relationship, one counterparty, and one adverse decision—the terminal contract—and the value of what was lost is fixed by the terms of that appointment. That item is specifically stated. Should the Court conclude that the Rule also requires the dollar figure—an annual salary of $69,000, with employment benefits—the periods of loss, or further causal detail, Plaintiff requests leave to plead them. *See* Part VIII, *infra*.

Nor does the FAC's candor about causation undermine the claim. Count II seeks that loss to the extent discovery and proof establish that the publication caused or contributed to it. FAC ¶¶ 53, 70, 79–80. That framing limits recovery to harm attributable to Defendant and acknowledges that the decisive records lie in a nonparty's files; it does not concede that the causal link is speculative. A party may plead "hypothetically," Fed. R. Civ. P. 8(d)(2), and in *KLEO* the court of appeals reversed a district court that had "focused myopically" on an allegation pleaded on information and belief, because "[t]he presence of some conclusory allegations does not negate the combined force of other well pleaded factual contentions." 148 F.4th at 750–51.

**C. The pleaded causal sequence is clear, logical, and factually grounded.**

The FAC pleads each link in the causal chain with facts, most documented in the participants' own words. First, Defendant published the accusation to the one person with "ultimate authority" over Plaintiff's employment. Mem. 13; FAC ¶¶ 33, 65, 73. Second, that decisionmaker received it as credible: she replied that it "would not surprise" her and asked for "anything else." FAC ¶ 44. Third, at approximately 9:03 the next morning, she wrote that she had "forwarded this info to our HR office for their ongoing investigation into this faculty member," and that human resources had "asked me for any more specifics I can provide." *Id.* ¶ 45. Cox wrote "this info" after receiving both the post and the accusation, and the reasonable inference is that it included the accusation or its substance. *Id.* ¶¶ 46, 52. Fourth, the investigation continued, and Georgia College then issued Plaintiff a terminal contract, ending an appointment in which he had been rated as exceeding expectations in every core category and confirmed to be on track for tenure and promotion consideration. *Id.* ¶¶ 22–25, 50.

That sequence is at least as "clear, logical, and factually grounded" as the one the D.C. Circuit held sufficient in *KLEO*. 148 F.4th at 748–49. There, the defendant's chief executive

disparaged the plaintiff in a podcast interview aired during a major industry conference; manufacturers then expressed doubt about the plaintiff's network and later refused to partner with it. The court held that the sequence gave rise to "a natural inference" of causation and reversed the dismissal of that category of special damages. *Id.* The chain in *KLEO* depended on inferring what the manufacturers had heard and why they acted. Here, the recipient confirmed in writing, the next morning—after receiving both the post and the accusation—that she had forwarded "this info" to the office investigating Plaintiff, and that office asked for more. FAC ¶ 45. The Motion cites *KLEO* for the per se and Rule 9(g) standards, Mem. 8–9, 15–16, but not for what the court did with causation.

Nor can Defendant break the chain because Cox, not she, delivered the information to human resources. Publication is a legal cause of special harm resulting from a third person's repetition if the third person "was privileged to repeat it" or the repetition "was reasonably to be expected." Restatement (Second) of Torts § 576(a), (c) (Am. L. Inst. 1977). On Defendant's own theory, Cox had a legitimate interest in information about her employee, Mem. 13–14, which would make her repetition privileged. And an employer-directed accusation of faculty misconduct could foreseeably be conveyed by the university president to the office investigating that employee; Cox's next-morning statement that she had forwarded "this info" supplies a factual basis for inferring that it was. FAC ¶¶ 45–46, 52, 73. By then, Defendant knew that Cox had forwarded "this info" to human resources for its ongoing investigation, and she responded by supplying the requested screenshot without correcting or qualifying the accusation. *Id.* ¶¶ 45–49, 52, 60.

### D. The Motion's alternative explanation raises a fact question, not a pleading defect.

The Motion says that Plaintiff "does not allege that President Cox sent her full text exchange" to human resources, Mem. 3, and that Georgia College "was focused on the listserv post," Mem. 17. The FAC need not plead the contents of a nonparty's file. It pleads facts supporting the reasonable inference that Cox conveyed the accusation or its substance, and explains why the precise material is not yet in Plaintiff's hands. FAC ¶¶ 46, 50–52. Cox's first response to the accusation was to ask for more of the same, *id.* ¶ 44, and her later request for a screenshot, on behalf of an office seeking "any more specifics" about "this faculty member," *id.* ¶ 45, does not show that the accusation was set aside. Defendant reads "this info" to mean the post alone. Mem. 3. That is one reading, and not the most natural one; the Motion itself acknowledges that "it is not clear" whether the sentence was shared beyond Cox. Mem. 16. A complaint survives "[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (alterations in original) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

The investigation that predated the statement does not sever causation either. The Motion treats it as an alternative explanation for Plaintiff's loss. As pleaded, it was the channel through which Defendant's accusation operated. An open investigation is not a decision, and its outcome was not fixed when Defendant introduced into it a distinct allegation, different in kind from a listserv discussion of classroom conduct. FAC ¶ 52. The institution then issued the terminal contract. *Id.* ¶ 50. A charge delivered to investigators while their inquiry is open is positioned to shape its outcome.

*KLEO* rejected the same reasoning. The district court there "gave undue weight to a potential alternative explanation" for the plaintiff's losses—an adverse event that "preceded the conference by about three weeks." 148 F.4th at 749–50. The court of appeals held that the complaint supported the plaintiff's causal account notwithstanding the earlier event. *Id.* at 749–51. The case for causation is stronger here: the earlier event in *KLEO* might have operated on its own, while the investigation here is the very process into which Defendant's accusation was fed. A cause that operates through the supposed alternative is not displaced by it.

District law does not require that Defendant's publication be the sole cause of Plaintiff's loss. Where concurrent causes are at issue, the question is whether the defendant's conduct was a substantial factor in bringing about the harm. *See Lacy v. District of Columbia*, 424 A.2d 317, 320–21 (D.C. 1980); Restatement (Second) of Torts § 431 (Am. L. Inst. 1965). Whether a new and more serious charge—received as credible by the decisionmaker, plausibly conveyed to the investigating office, and followed by that office's request for more—was a substantial factor in the decision that followed is a question of fact. FAC ¶¶ 44–46, 50–53. The Motion's contrary premise—that the listserv post was the sole cause—rests on the Georgia pleading, which cannot be considered for its truth, *see* Part III.A, *supra*, and which does not say what the Motion attributes to it, *see* Part VII, *infra*.

Finally, where the FAC pleads on information and belief, FAC ¶¶ 11, 13, 20, 41, or by reasonable inference, *id.* ¶¶ 46, 52, it states the supporting facts and explains that the investigative file and the decisionmakers' communications are held by a nonparty institution, *id.* ¶¶ 46, 50–51. Pleading on information and belief is permitted when "the necessary information lies within defendants' control," if the allegations are "accompanied by a statement of the facts upon which the allegations are based." *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021)

(quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)). The FAC satisfies the second requirement, and the rationale of the first applies with equal force where the information lies with a nonparty Plaintiff cannot compel before discovery. In *Castillo Butters*, a plaintiff who plausibly alleged that a communication referred to him was "entitled to discovery regarding the contents" of a password-protected website he could not access. 176 F.4th at 48 n.2. What Cox forwarded to human resources stands on the same footing.

## VII. JUDICIAL ESTOPPEL DOES NOT APPLY.

Judicial estoppel is an equitable doctrine. In deciding whether to apply it, courts typically consider whether a party's later position is clearly inconsistent with its earlier one, whether the party succeeded in persuading a court to accept the earlier position, and whether the party would derive an unfair advantage or impose an unfair detriment if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). None of those considerations supports estoppel here.

There is no clear inconsistency. The Motion asserts that Plaintiff claims in Georgia that he lost his position "solely because of his listserv post." Mem. 4; *see* Mem. 16–17. The only paragraph it quotes alleges that "[b]ut for" the Georgia defendants' retaliation, Plaintiff "would have earned tenure." Mem. 4 (quoting Ex. A ¶ 99). The word "solely" is Defendant's. But-for causation is not exclusive causation: an institution that retaliated against Plaintiff for his post could also have relied on the investigative record to which Defendant contributed. *Cf.* Fed. R. Civ. P. 8(d)(3). Moreover, Plaintiff did not learn of Defendant's statement until January 2026, after the Georgia action was filed. FAC ¶ 67; *see* Mem. 1. Estoppel may be resisted "when a party's prior position was based on inadvertence or mistake." *New Hampshire*, 532 U.S. at 753 (citation omitted).

There is no judicial acceptance of any exclusive-causation position. Defendant points to the Middle District of Georgia's September 11, 2026 order. Mem. 4, 17 (citing Ex. C). That court

applied Rule 12(b)(6) and allowed the First Amendment claim to proceed for injunctive relief, while dismissing specified damages claims on immunity grounds and dismissing other claims as described in its order. *See Lamparello v. Cox*, No. 5:25-cv-00469, ECF No. 18, at 18–19, 23–24 (M.D. Ga. Sept. 11, 2026). It did not adjudicate whether Kaufman's distinct accusation caused the injuries alleged here. The Motion's own parenthetical describes the cited pages as "summarizing Plaintiff's account." Mem. 17 (citing Ex. C at *1–5). Background recitals are not judicial acceptance.

And there is no unfair advantage. The FAC disclaims recovery for harm caused solely by independent institutional conduct and seeks no duplicative recovery. FAC ¶¶ 53, 79. Estoppel could not in any event reach Count I's presumed general damages, which do not depend on the termination. Judicial estoppel protects the integrity of judicial proceedings; it does not convert care in pleading causation into a bar on pleading it at all.

## VIII. DISMISSAL WITH PREJUDICE WOULD BE UNWARRANTED.

Dismissal with prejudice is appropriate only where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone*, 76 F.3d at 1209 (quoting *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985)). That standard cannot be met. Plaintiff's single prior amendment corrected allegations concerning citizenship and jurisdiction, FAC ¶ 14, not any defect the Motion addresses. The issues the Motion raises—meaning in context, abuse of privilege, and causation—are fact-dependent, and the evidence bearing most directly on them is held by a nonparty and untested by discovery. Any perceived deficiency in itemization or detail is curable.

If the Court identifies any curable defect, Plaintiff requests that any dismissal be without prejudice and that he be permitted to seek leave to amend under Rule 15(a)(2), which is freely given absent undue delay, bad faith, repeated failure to cure, undue prejudice, or futility. Fed. R.

Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The motion would be accompanied by the proposed pleading required by Local Civil Rule 15.1. Using facts presently in Plaintiff's possession, the amendment would (1) supplement paragraphs 51 and 67 with the contents of the Georgia Open Records Act production, including internal correspondence postdating Defendant's communications; (2) supplement paragraphs 70(c)–(d) and 80 with the $69,000 annual salary and associated benefits, the periods of loss following the terminal-contract year, and the compensation received during that year; and (3) attach the Messenger exchange.

## CONCLUSION

The pleaded facts are not petty. Defendant took a post from a closed professional forum, sent it to its author's university president, called him a "True nut case," and, in the same exchange, accused him of harassing women faculty while admitting that she could not recall the details. Told the next morning that Cox had forwarded "this info" to human resources for an ongoing investigation of Plaintiff, she withdrew nothing. Georgia College issued Plaintiff a terminal contract.

Defendant opened her charge with "I believe" and closed it with "I forget the details." She now offers the first phrase as a shield and the second as proof of care. Neither can bear that weight on a motion that requires the Court to accept the pleaded facts as true. A motion to dismiss tests a pleading, not a person.

The FAC plausibly alleges a false employer-directed accusation implying verifiable professional misconduct, publication to a third party, the requisite fault, and actionable harm. Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss, ECF No. 9, in its entirety or, alternatively, dismiss without prejudice and with leave to seek the amendment described above. If the Court contemplates conversion, Plaintiff requests a reasonable opportunity to respond under Rules 12(d) and 56(d).

Dated: October 16, 2026

Respectfully submitted,

Adam Lamparello
Adam Lamparello
Plaintiff Pro Se
201 Berkshire Road
Hasbrouck Heights, New Jersey 07604
Telephone: (201) 317-5115
adam@lamparello-law.com

**CERTIFICATE OF SERVICE**

I certify that on October 16, 2026, I submitted the foregoing Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss and Proposed Order to the Clerk of Court for filing, and that on the same date I served a copy of both documents by email to the email addresses listed below.

Rebecca S. LeGrand
LeGrand Law PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
rebecca@legrandpllc.com

Scott Shuchart
Shuchart PLLC
5636 Connecticut Ave., NW #42289
Washington, DC 20015
scott@shuchartlaw.com

Adam Lamparello
Adam Lamparello
Plaintiff Pro Se