**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ADAM LAMPARELLO,

*Plaintiff*,

v.

BILLIE JO KAUFMAN,

*Defendant*.

No. 1:26-cv-02646-SLS

**DEFENDANT BILLIE JO KAUFMAN'S REPLY**
**MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS**

Defendant Billie Jo Kaufman, a law librarian at the University of the District of Columbia, moved to dismiss this suit because the single sentence at issue (the "Challenged Sentence") is not defamatory, and did not harm Plaintiff Adam Lamparello. *See* Mem. in Support of Mot. to Dismiss (ECF No. 9-1). The Challenged Sentence, which Ms. Kaufman sent to just one person, states in its entirety: "I believe he was harassing women faculty with emails last yr but I forget the details." Amended Complaint (ECF No. 5) ("FAC"). Plaintiff's Opposition brief (ECF No. 11) labors to turn the Challenged Sentence into a tort, but the Challenged Sentence cannot support a libel claim, no matter how Plaintiff seeks to characterize it.

**I. Plaintiff lost his teaching job because of his own listserv post, not because of the Challenged Sentence.**

Plaintiff Adam Lamparello lost his teaching job at Georgia College after he posted a message on the Legal Writing Institute listserv on May 29, 2025 accusing his undergraduate students of plagiarism and calling them entitled and fragile. FAC ¶¶ 31, 50. Ms. Kaufman received Plaintiff Lamparello's listserv post, and forwarded it to her friend, Cathy Cox, the President of Georgia College. *Id*. ¶¶ 9, 33. President Cox thanked Ms. Kaufman for sharing the listserv post,

and said: "A pattern – every time he gets into trouble he starts attacking students, filing complaints against them – anything to discredit the students before they get the nerve to file complaints against him." Exhibit B to Mot. to Dismiss (ECF No. 9-3) at 3. In response, Ms. Kaufman commented: "I believe he was harassing women faculty with emails last yr but I forget the details," (the Challenged Sentence) to which President Cox replied "That would not surprise me." *Id*. Those facts do not plausibly support Plaintiff's argument that he was defamed by the Challenged Sentence.

The context surrounding the Challenged Sentence strongly supports that conclusion. President Cox described Plaintiff's "pattern" of "attacking students, filing complaints against them—anything to discredit the students before they get the nerve to file complaints against him." ECF No. 9-3 at 3. In response to that comment, Ms. Kaufman commented that Mr. Lamparello may have sent harassing emails to women faculty the prior year, though Ms. Kaufman does not recall the details. *Id*.

The ordinary definition of "harassing" is persistently annoying, and that is the natural reading of the comment Ms. Kaufman shared with President Cox. *See* ECF No. 9-1 at 9 (discussing the definition of "harassing"). Ms. Cox first said that Mr. Lamparello had engaged in a pattern of behavior involving "attacking students, filing complaints against them – anything to discredit the students." ECF No. 9-3 at 3. That pattern of behavior can fairly be called harassing students. Indeed, in his related complaint against Georgia College, Mr. Lamparello himself describes similar vexatious conduct as "harassment," though in Mr. Lamparello's opinion it was Georgia College that was doing the harassing, not him. *See* ECF No. 9-2 at ¶ 75 (alleging Georgia College has been tarnished by its "*harassment* of its most capable faculty, its coddling of its most incapable and

mendacious students, and its decision to ignore serious student misconduct that did not stop short of false and defamatory accusations against professors.") (emphasis added).

President Cox's observation sparks Ms. Kaufman to respond with her own tentative recollection that Mr. Lamparello may also have been "harassing women faculty with emails last yr." ECF No. 9-3 at 3. The exchange between Mr. Kaufman and President Cox shows that Ms. Kaufman's tentative recollection of harassing emails sent to other faculty members the year before could not plausibly have harmed Mr. Lamparello's career. Instead, it is Mr. Lamparello's own listserv post that damaged his career, as the Amended Complaint all but acknowledges. *See*, *e.g.*, FAC ¶ 5; *Id*. ¶¶ 27-29 (complaining "Plaintiff did not consent to Defendant's disclosure of the post to President Cox").

**II. Plaintiff's pending lawsuit against Georgia College undermines any remaining suggestion that he was harmed by the Challenged Sentence.**

After Mr. Lamparello lost his teaching position, he sued Georgia. Exhibit A to Mot. to Dismiss (ECF No. 9-2) (*Lamparello v. Cathy Cox*, *et al.* Second Amended Complaint). In the Georgia lawsuit, Mr. Lamparello states unequivocally that he lost his teaching position as a result of his own May 29, 2025 listserv post. *See, e.g.*, ECF No. 9-2 ¶¶ 56-73 (describing how Mr. Lamparello learned that he was losing his teaching position because of his May 29, 2025 listserv post). As Mr. Lamparello explains in his Georgia complaint, when he met with the Georgia College HR team on July 1, 2025, they told him he was being terminated because of his listserv post, and that it was "a 'colleague from a law school out of state'—not anyone affiliated with Georgia College and State University—who had provided Professor Lamparello's listserv post to Defendant Cox." ECF No. 9-2 ¶ 72.

In the Georgia suit, Mr. Lamparello argues that he was wrongfully terminated in retaliation for exercising his First Amendment rights, because his May 29, 2025 listserv post addressed a

matter of public concern, specifically: "the tendency of educational institutions and administrators such as [Georgia College] President Cathy Cox to coddle students rather than teach them subject-matter mastery and meaningful skills for their future careers and obligations as citizens." ECF No. 9-2 ¶ 137, *see also*, *Id*. ¶ 7 (discussing "the decision to terminate Plaintiff's employment due to his protected speech"); *Id*. ¶ 81 ("The truth is that before the HR meeting was scheduled, the conclusion to terminate Professor Lamparello was already made in retaliation for his constitutionally protected speech."); *Id*. ¶ 99 ("But for Defendants' retaliation against Professor Lamparello for his exercise of protected speech as a citizen on matters of public concern, there is no doubt he would have earned tenure."); *Id*. ¶ 142 ("because Professor Lamparello's protected speech supposedly hurt the 'image' of Georgia College and State University, Defendants fired him.").

The detailed facts that Mr. Lamparello presented to the District Court in Georgia without any equivocation or hedging undermine his claims here.

**III. The Challenged Sentence is too indefinite to be defamatory, let alone defamatory per se.**

To be actionable as defamation, as statement "must be more than unpleasant or offensive; it must make the plaintiff appear odious, infamous, or ridiculous." *Castillo Butters v. Nat'l Acad. of Scis*., 176 F.4th 43, 48–49 (D.C. Cir. 2026) (quoting *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001) (internal quotation marks and alterations omitted). Plaintiff argues that the Challenged Sentence could hypothetically be read as defamatory, and is therefore actionable. *See* Opp'n at 13-14. But context matters. When deciding if a statement can reasonably be found to carry defamatory meaning, "the publication must be taken as a whole" and considered as it "would be understood by the readers to whom it was addressed." *Chishti v. Spottiswoode*, 181 F.4th 92, 103 (D.C. Cir. 2026) (quoting *Afro–American Publ'g Co. v. Jaffe*, 366 F.2d 649, 655 (D.C. Cir.

1966)) (quotation marks omitted). Here, the context in which the Challenged Sentence appeared undermines the argument that it is actionable as defamation, particular given the sole reader it was addressed to. !

Plaintiff cites the D.C. Circuit's recent decision in *Castillo Butters v. National Academy of Sciences*, 176 F.4th 43 (D.C. Cir. 2026) for the proposition that a statement should be found capable of having a defamatory meaning even if some interpretations of the statement are not defamatory. But the facts of *Castillo Butters* are distinguishable. *Castillo Butters* dealt with a public announcement that a professor's membership in an organization had been rescinded based on a violation of the organization's code of conduct. In *Castillo Butters*, the Court found that the announcement was capable of defamatory meaning, even though the code of conduct at issue was broadly worded, and some violations of the code could not be considered defamatory. *Id*. Importantly, in reaching that decision, the Court considered the context in which the announcement was made, including, among other things, the fact that "members of the scientific community" would "likely understand" that expulsion from the organization only happened when there was "a serious transgression of the Code of Conduct" (*id*. at 49), and the fact that news outlets quickly concluded that the professor had in fact been ejected "for sexual harassment" (*id*. at 46). The facts in this case are quite different.

The Challenged Sentence does not reference any specific policy or point to a specific event. It talks about harassment, not "sexual harassment," and the sole intended reader—President Cox—would not have been confused about the that. *See* Section I, *supra* (explaining the Challenged Sentence came in response to President Cox's description of Mr. Lamparello's vexatious behavior towards students). And Ms. Kaufman included cautionary language to alert the sole reader that her

information was uncertain and unverified. Those facts do not support a conclusion that the Challenged Sentence could have plausibly carried a defamatory meaning.

The Challenged Sentence is certainly not defamation per se, which applies only to "statements about extreme subjects," on the level of "a criminal offense; a loathsome disease; . . . [un]fitness for trade, business, or profession; or serious sexual misconduct," *KLEO AG v. Rivada Networks, Inc.* 148 F.4th 741, 746 (D.C. Cir. 2025) (quotation marks and citation omitted); *cf.* Pl. Opp. at 15-16. To the extent that Plaintiff is suggesting that *any* accusation of harassment of colleagues is defamation per se, that argument that position ignores the high bar for defamation per se in the District of Columbia and in other jurisdictions. *Id*. For example, in *Liberman v. Gelstein*, 80 N.Y.2d 429 (N.Y. 1992), New York's highest court refused to classify even allegations of harassment rising to the level of a violation of the New York Penal Laws (albeit as a "relatively minor offense…not even a misdemeanor") as defamation per se. *Id.* at 436.

**IV. The common interest privilege shields the Challenged Sentence from being actionable as defamation.**

Plaintiff argues that the Challenged Sentence should be read as a serious allegation of misconduct that "in an academic workplace, can trigger reporting obligations[.]" Opp'n at 14. To the extent that argument has any merit, it serves to emphasize that Ms. Kaufman's messages with Dean Cox were a protected disclosure, which cannot support a libel claim absent plausible allegations of actual malice.

Plaintiff's arguments against the application of the common-interest privilege are unavailing. That qualified privilege applies when a statement was "(1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, (3) to a person who has such a corresponding interest." *Moss v. Stockard*, 580 A.2d 1011, 2024 (D.C. 1990).

"Once the court determines a statement is subject to the 'common interest' privilege, the defendant 'will be presumed to have been actuated by pure motives in its publication. In order to rebut this presumption, express malice or malice in fact must be shown [by the plaintiff].'" *Id.* (quoting *Ford Motor Credit v. Holland*, 367 A.2d 1311, 1314 (D.C. 1977)). Here the preconditions all apply, and the Amended Complaint does not plausibly allege any facts that could establish "malice" as that term is understood under D.C. law.

Plaintiff agrees that *Moss* sets forth the applicable framework and standard, but argues that Ms. Kaufman was an "outsider" to Georgia College such that her "unsolicited" report of possible bad behavior could not be privileged. Opp'n at 20-23. Plaintiff also argues that the question of abuse of the privilege, subject to the malice standard, cannot be resolved on the face of the pleadings. *Id*. at 23-27. But he is incorrect. Ms. Kaufman's full exchange with President Cox shows that Ms. Kaufman was making a good-faith report to alert Mr. Lamparello's employer of information she felt duty-bound to share. An exchange between two academic administrators is precisely the kind of disclosure that the common interest privilege was developed to shield. And the allegations in the Amended Complaint do not support an inference of negligence, let alone actual malice.

The common-interest privilege shields good-faith disclosures by anyone with either "an interest" in the subject or who "has, or honestly believe he has, a duty to a person having a corresponding interest or duty." *Moss v. Stockard*, 580 A.2d 1011, 2024 (1990). That analysis does not turn on whether or not Ms. Kaufman worked at Georgia College. *See*, e.g., *Payne v. Clark*, 25 A.3d 918 (D.C. 2011) (applying the privilege to allegations of misconduct made by members of the public); *Sowder v. Nolan*, 125 A.2d 52, 54 (D.C. 1956) ("[A]n informant, acting out of what he believed to be his social duty" to report police misconduct, "would be entitled to the defense of

qualified privilege," though well-instructed jury found otherwise). In *Caudle v. Thomason*, 992 F. Supp. 1 (D.D.C. 1997), for example, a communication from the owner of an aviation consulting firm to the Presidential aide overseeing the White House Travel Office was shielded by the common interest privilvege because it was conveyed by "a friend of and advisor to President Clinton, [who] had an interest in assuring the smooth functioning of the Administration." *Id.* at 4. All of which is to say that Ms. Kaufman is not precluded from making a privileged disclosure simply because she was an "outsider" to Georgia College, indeed she made precisely the sort of disclosure that the common interest privilege is designed to protect.

Ms. Kaufman saw a posting on a listserv of thousands that berated a small, identifiable, group of students at a specific, named institution; she called that to the attention of a responsible official, and mentioned other information she had heard about the poster in response to comments from the responsible official. All of that is consistent with an individual who was acting out of a good-faith perception of shared interest or professional duty, which is all the common interest privilege requires.

As to meeting the actual malice standard required to overcome the common interest privilege, the Amended Complaint does not plausibly allege negligence, let alone actual malice, which requires at a bare minimum "reckless or callous disregard for [the effect of a statement] upon the reputation of the plaintiff." *Moss*, 580 A.2d at 1025.

"To allege negligence, a plaintiff must plead facts showing that a defendant failed 'to observe an ordinary degree of care in ascertaining the truth of an assertion before publishing it to others.'" *Passantino v. Weissmann*, No. 23-cv-2780 (LLA), 2026 WL 2824593, at *5 (D.D.C. Sept. 21, 2026) (quoting *Kendrick v. Fox Television*, 659 A.2d 814, 822 (D.C. 1995)). To accomplish that, a plaintiff "must identify some fact that put the defendant on notice that his

statement was false or bore a serious risk of falsity." *Id.* (citing Restatement (Second) of Torts § 580B cmt. j). Here, the Amended Complaint does not plausibly allege facts suggesting Ms. Kaufman negligently conveyed information that bore a serious risk of being false, let alone acted with a "reckless or callous disregard" for the truth.

### V. Plaintiff has not plausibly pled special damages, or any harm at all.

Unless the single Challenged Sentence was so egregious as to constitute defamation per se, plaintiff needs to show actual, or special, damages, which he cannot due. As discussed in Sections I & II above, Mr. Lamparello's own allegations, in both this case and his related suit against Georgia College, show that Mr. Lamparello lost his teaching position because of his own cruel listserv post, not because of Ms. Kaufman's vague recollection of other vexatious conduct.

Indeed, the Amended Complaint studiously avoids alleging that President Cox republished the Challenged Sentence to anyone at all. FAC ¶ 50 (alleging "Defendant's accusation was part of the information contained *in the exchange President Cox referenced* when she wrote that she had forwarded Defendant's 'info' to human resources for its ongoing investigation") (emphasis added). Plaintiff's Opposition nonetheless argues that when President Cox wrote "I've forwarded this info" to the College's human resources department, the "info" included the Challenged Sentence. Opp'n at 1, 5-6. But a review of the full exchange between Ms. Kaufman and President Cox undermines that suggestion. ECF No. 9-3.

Plaintiff also complains that without receiving discovery, he cannot know who, if anyone, Ms. Cox shared the Challenged Sentence with. Opp'n at 34. But Mr. Lamparello obtained the Challenged Sentence through Georgia Open Records Act requests (FAC ¶ 67), which should also have revealed any republication of the Challenged Sentence. Mr. Lamparello could have at least asked President Cox if she shared the Challenged Sentence with anyone before bringing a federal

case against Ms. Kaufman. But Mr. Lamparello is not looking to get the answer to that question (because the answer is that President Cox did not share information about Mr. Lamparello potentially harassing women faculty members with anyone). Instead, Mr. Lamparello is looking for a vehicle to punish Ms. Kaufman, who he blames for the loss of his teaching position because she was the "informant" who told President Cox about his listserv post. *See* ECF No. 9-2 at ¶¶ 72-73.

The Amended Complaint all but admits that the real reason Mr. Lamparello feels wronged by Ms. Kaufman is that she sent his listserv post to President Cox. *See* FAC ¶ 5; *Id*. ¶¶ 27-29 (complaining "Plaintiff did not consent to Defendant's disclosure of the post to President Cox"). But Mr. Lamparello cannot blame Ms. Kaufman for harm caused by his own words, so he seeks to shift blame to the blame to the Challenged Sentence.

That claim that Mr. Lamparello's career was harmed by the Challenged Sentence is implausible. Mr. Lamparello's own allegations in the Georgia litigation show the Challenged Sentence did not cause him to lose his job. *See* Section II, *supra*. Plaintiff Lamparello has not plausibly alleged that he suffered any harm given that. Without republication to others, or any other reason to believe the Challenged Sentence had anything to do with how Georgia College treated Mr. Lamparello, there is nothing to support his request for special damages, and his ordinary defamation claim fails for that reason alone.

**VI. The Amended Complaint if fatally flawed, and it should be dismissed with prejudice.**

The Amended Complaint rests on flawed theories that cannot be saved though amendment. In short, if the Challenged Sentence is indefinite, or an expression of opinion, it is not actionable; if it stated a serious fact, it was a good-faith, privileged report; since it was not defamatory per se, plaintiff needed to plead special damages; and his only theory of damages, as presented in the

alternative Count II, is hopeless in terms of causation particularly given his parallel Georgia lawsuit. The Challenged Sentence cannot support a defamation claim for those reasons, no matter how much ink is spilled, and Mr. Lamparello's complaint should be dismissed with prejudice.

Dated: October 24, 2026

Respectfully Submitted,

*s/ Rebecca S. LeGrand*
Rebecca S. LeGrand (DC Bar 493918)
LeGrand Law PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Phone: (202) 587-5725
rebecca@legrandpllc.com

Scott Shuchart
Shuchart PLLC (DC Bar 1531377)
5636 Connecticut Ave., NW #42289
Washington, DC 20015
Phone: (202) 527-9026
scott@shuchartlaw.com